Michael N. KLEINBART, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 21408.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 3, 1968.

Decided Oct. 9, 1970.

Mr. William J. Garber, Washington, D. C., for appellant.

Mr. William M. Cohen, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty. at the time the brief was filed, Frank Q. Nebeker, Asst. U. S. Atty. at the time the brief was filed, and Harold H. Titus, Jr., Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and LEVENTHAL, Circuit Judge.

BAZELON, Chief Judge.

Appellant was convicted of facilitating the concealment of illegally imported narcotics [1] and, as a prior drug offender [2]

---

1. 21 U.S.C. § 174 (1964). Appellant was acquitted by the jury of a charge of distributing narcotics other than from the original stamped package. 26 U.S.C. § 4704(a) (1964).

2. Appellant in 1958 had been convicted of violating the Marijuana Tax Act, 26 U.S.C. § 4744 (1964).

sentenced to mandatory minimum term of ten years in prison. On this appeal, he challenges the legality of the search which produced the evidence leading to his conviction, and of the mandatory minimum sentence to which he was subjected. For the reasons hereafter appearing, we find no constitutional infirmity in the challenged search. However, because of our intervening decision in Watson v. United States,[3] we remand the case to the District Court for resentencing in light of *Watson* and such further proceedings as may thereafter be appropriate.[4]

## I.

In the afternoon of Inauguration Day, 1965, the police received a telephone call from an unnamed but known informer,[5] who told them that appellant was in Room 903 of the Cairo Hotel and had with him a large quantity of drugstore narcotics which had come from a "drug store housebreaking" in Kensington, Maryland the weekend before.[6] The policeman immediately called the United States Commissioner, then at his home in Maryland, to see if a warrant could be obtained. The Commissioner replied that, having no pass to gain entry to the courthouse, he would be unable to get to his office to issue a warrant. The officer then called the Court of General Sessions, where no one answered the phone. Finally, he called an Assistant United States Attorney, who directed him to go to the hotel and "investigate" the housebreaking.[7]

Three police officers went to the Cairo Hotel. They proceeded immediately to Room 901, next door to 903 in which appellant and the narcotics were thought to be. The occupant of 901 allowed Detective Panetta to station himself at the window, where he could observe the window of Room 903 in the event that something might be thrown out of that room. Detectives Paul and Brewer then knocked on the door of Room 903; when a voice inside asked who was there, Paul identified himself as "Detective David Paul" and asked to speak to "Michael Kleinbart." The voice asked Paul to "wait a minute," and the officers heard someone moving away from the door. Detective Panetta then saw a man in undershorts move past one of the windows of Room 903, and immediately thereafter observed a naked arm throw a small bottle out of the window; the bottle landed on the second floor roof, six stories below. Panetta immediately shouted, "He threw the stuff out the window!" Paul banged on the door and demanded entry, saying "Kleinbart, you are under arrest for violation of narcotic laws." He heard something heavy slide up to and bang against the door; he and Brewer then forced the door open and found that a heavy steel bed had been pushed against it.

The officers entered and found appellant standing near the rear window of the room dressed only in undershorts. They also found another man in the room, seated in a chair and fully dressed. Appellant was immediately placed under arrest. Detective Paul found a tablet, later identified as the drugstore narcotic Dolophine,[8] on a window sill. Detective Panetta retrieved the bottle thrown out

3. 141 U.S.App.D.C. ——, 439 F.2d 442 (No. 21,186, July 15, 1970).

4. See p. 514 *infra*.

5. According to testimony below, the informer had been known to the officer taking the call for 18 to 24 months. During that time, he had made purchases of narcotics under police supervision and had passed on narcotics information coming to his attention. According to the police officer testifying below, up to this time all of the information provided by this informant had been "totally and completely reliable."

6. The police at that time had knowledge that such a housebreaking had taken place.

7. According to testimony below, the officer was told "Well, you better go up today and investigate since the man is there under an alias. It is a hotel. He probably won't be there tomorrow. Go up and ascertain whether this individual is there." No further elaboration of these instructions was made.

8. Surprisingly, in view of the "reliable" informant's unequivocal statement this was the only bit of drugstore narcotics ever found in the hotel room.

the window, which later turned out to contain twenty-six capsules of heroin and two of cocaine. Traces of heroin were also found on narcotics paraphernalia and empty capsules found on a table in the room.

## II.

■ We find no constitutional infirmity, on these facts, in the events leading up to appellant's arrest and the seizure of the materials upon which his conviction is founded. Whatever one may think of the quality of the informer's information in the present case, Detective Paul's stirring testimonial as to his previous reliability, credited by the trial judge, established a valid basis for crediting his information. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). The informant had stated that he had been in the room and seen the drugstore narcotics there. *Cf.* Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). We need not decide whether, under the circumstances here disclosed, the police would have been justified in immediately making an unconsented entry into the hotel room to search for the drugs once they encountered substantial difficulty in finding a magistrate to issue a search or arrest warrant. *Cf.* Dorman v. United States, 140 U.S.App.D.C. 313, 435 F.2d 385 (1970) (en banc). For the officers, on this information, did nothing more than go to appellant's hotel room, identify themselves, and ask to speak to him. At this point, they saw a bottle hurled from a window of the room. This, we believe, taken in the context of the information already in the officers' possession, established both probable cause to believe that someone in the room had feloniously been concealing narcotics, and the justification necessary to effect an immediate entry into the room.[9]

When the officers, demanding entry, heard the occupants of the room barricade the door, they were justified in forcing their entry rather than waiting for the door to be opened. *Compare* Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Once in the hotel room, they were entitled to seize evidentiary material lying in plain view. Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *cf.* Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Accordingly, the narcotics found in the room, as well as the bottle and its contents thrown out the window, were properly admitted into evidence.

## III.

In the court below, appellant argued that as a narcotics addict he could not constitutionally be subjected to a mandatory minimum sentence of ten years' imprisonment for the mere concealment of contraband drugs necessary to feed his addiction, and he renews that contention here. Subsequent to the oral argument in this case, a similar contention was accepted by a majority of the division of this court that first heard Watson v. United States.[10] On rehearing *en banc,* however, the original opinion was vacated, and the case remanded for consideration of rehabilitative disposition under the Narcotic Addict Rehabilitation Act.[11] Accordingly, the question here presented, and decided by the original panel in *Watson,* was not reached by the *en banc* court.[12] The *en banc* court in *Watson,* however, did suggest that serious statutory and constitutional questions would be raised by application of the statute under which appellant was convicted to a narcotics addict in possession only of drugs for his own use, regardless of the sentence imposed.[13] It avoided decision of those questions only

---

9. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1961).

10. That opinion is reprinted as an appendix to Judge Bazelon's separate opinion in Watson v. United States, *supra,* note 3 at 445, 439 F.2d at 442.

11. 18 U.S.C. §§ 4251–4255 (Supp. IV, 1969).

12. Watson v. United States, *supra,* note 3 at 458, 439 F.2d at 442.

13. *Id.* at 473–475, 439 F.2d at 442.

**514**

because Watson had not provided an adequate foundation for their consideration by appropriately raising them in the trial court.[14]

We may not affirm the sentence imposed upon appellant in this case without deciding the constitutional question that he has presented, both here and in the trial court. Yet the operative facts upon which that contention turns are precisely the same as would also raise the questions limned by the *en banc* court in *Watson*: whether the statute under which appellant was convicted applies to him at all. If those questions are eventually resolved by deciding that the statute does not apply to an addict in possession only of drugs for his own use, the similar question regarding the constitutionality of the mandatory minimum sentence imposed upon appellant would be of importance only to him: for all other persons who could establish the factual predicate for such a claim would at the same time have established the facts necessary to show that their conduct was not prohibited by the statute.

 We feel that the best course to take in these somewhat unusual circumstances is to avoid decision of the claim raised by appellant unless such decision is absolutely necessary. Accordingly, in the interests of justice, we vacate the sentence imposed upon appellant by the court below and remand the case for consideration whether appellant is eligible for rehabilitative disposition under the Narcotic Addict Rehabilitation Act in light of our *en banc* decision in *Watson*.[15] If appellant is so eligible, and if such disposition is afforded him, the matter will be at an end, such disposition mooting his claim regarding the mandatory minimum sentence applied to him. If he is not given rehabilitative disposition under the Act, the trial court should

grant him leave to argue, under *Watson*, that the statute cannot be applied to him either as a matter of construction or of constitutional law, and to introduce such evidence as he can muster to support his claims.

Sentence vacated and case remanded for further proceedings consistent with this opinion.

14. *Id.*

15. *Watson, supra,* note 3 at 458, 439 F.2d at 445, held that it would offend the concept of equal protection subsumed within the due process clause of the Fifth Amendment to bar persons with prior

felony convictions from consideration for treatment under the Narcotics Rehabilitation Act. We express no opinion on whether that holding applies to cases which had completed the process of direct review when *Watson* was decided.