UNITED STATES of America

v.

Azra HAMILTON, Appellant.

No. 71–1148.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 31, 1972.

Decided April 6, 1972.

---

Mr. John A. Shorter, Jr., Washington, D. C., for appellant.

Mr. Daniel J. Bernstein, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry and Philip L. Cohan, Asst. U. S. Attys., were on the brief, for appellee. Mr. Harold H. Titus, Jr., U. S. Atty., also entered an appearance for appellee.

Before McGOWAN, LEVENTHAL and ROBB, Circuit Judges.

McGOWAN, Circuit Judge:

This appeal presents a single question as to the reach of our holding in Watson v. United States, 141 U.S.App.D.C. 335, 347–350, 439 F.2d 442, 454–457 (1970). That holding was that the statutory exclusion, because of two or more prior felony convictions, from eligibility for consideration under Title II of the Narcotic Addict Rehabilitation Act of 1966 (18 U.S.C. §§ 4251–4255) of a defendant newly convicted of a federal offense, was unconstitutional.

Appellant pleaded guilty to one count of an indictment charging him with a violation of 26 U.S.C. § 4704(a). Although the sentencing transcript indicates that the court may have believed him to be a narcotics addict, the court stated that it was powerless to consider appellant for disposition under Title II because of his prior felony convictions, and proceeded to sentence him to a prison term of 7 years.[1] The nature and dates of those felony convictions are as follows:

1947—Unauthorized use of a vehicle,
1948—Unauthorized use of a vehicle,
1952—Housebreaking,
1952—Housebreaking,
1962—Harrison Narcotics Act.[2]

■ Appellant now asserts that the *Watson* holding is applicable, and that the sentence should be vacated and the case remanded in order that the District Court may consider the possibility of according appellant Title II treatment.[3]

---

1. At sentencing, appellant's counsel represented him to be "a prime example of a man that for more than 20 years has been addicted to narcotics," and asked that he be "sent to some institution where he can get the proper medical and psychological treatment that he needs." The court's response to this was as follows:

> "THE COURT: Unfortunately, as you know, because of his prior record, and the crimes involved, he is not eligible for treatment under the Narcotics Addict Rehabilitation Act and there is a mandatory sentence here.
>
> \* \* \* \* \*
>
> "I will recommend medical treatment if possible, but I don't know what is available under the circumstances."

Although the sentencing took place six months after our decision in *Watson*, neither court nor counsel made any allusion to it.

2. Proof only of the *Harrison Act* conviction appears in the record. The Government relies on the District Court's power of judicial notice to supply this deficiency; and further represents itself as ready to prove that, although the housebreaking indictments are silent on this score, at least one of the housebreakings occurred at night, which makes it a crime of violence under 18 U.S.C. § 4251(b).

At oral argument before us, appellant did not contest the fact of the existence of the prior convictions, although it is not clear that this concession extended to the alleged "nighttime" aspect just referred to. In the view we take of the governing law, however, this aspect is irrelevant.

3. *See* Chicquelo v. United States, 146 U.S. App.D.C. 381, 452 F.2d 1310 (1971) ;

The Government, contrarily, asserts that *Watson* is to be confined narrowly to its facts, which were that the prior felony convictions there held by us not to be disqualifying involved narcotics offenses. It is the Government's submission that prior felony convictions for any other offenses, violent or nonviolent, are not within the intendment of the *Watson* holding.[4]

■ We do not view *Watson* as does the Government. The underlying rationale of our constitutional holding in *Watson* derived from the conflict between the benevolent and remedial purposes sought to be achieved by the Narcotic Addict Rehabilitation Act, on the one hand, and, on the other, the exclusion from its benefits of any addict "who has been convicted of a felony on two or more prior occasions." 18 U.S.C. § 4251(f) (4). This latter provision operates to divide addicts awaiting sentence for a federal offense into two classes, depending upon whether they have been convicted of two or more felonies prior to their present criminal involvement. In *Watson* we did not regard this classification as compatible with Fifth Amendment equal protection concepts, because the disqualification of addicts with two or more prior convictions was at odds with the stated purpose of the Act (rehabilitation of narcotics addicts), and could not be justified by imputing to Congress an independent rational purpose.[5]

There are three independent purposes which might conceivably be thought to justify the prior felonies disqualification of subsection (4). First, there is the purpose which Judge Robb identified in his dissent in *Watson*, namely, that "a hardened offender twice previously convicted of a felony, whether before or after 1966, is not a likely prospect for rehabilitation." 439 F.2d at 477. Since that justification was considered and rejected by the *Watson* majority, however, it is foreclosed to the Government in this case. So long as Congress has provided a procedure whereby the likelihood of rehabilitation is determined by the trial judge, who may seek the assistance of the Attorney General in that regard, there is no rational justification for a conclusive presumption that an addict with two or more prior felony convictions is not rehabilitable.

A second possible congressional purpose, which might be thought to justify subsection (4), relates to the deterrence of criminal activity. In enacting NARA, Congress clearly did not intend to nullify the deterrent effect of the criminal law with respect to narcotics addicts. Even though the prospect of non-criminal treatment under Title II may reduce the law's deterrent force in some situations. Congress preserved important disincentives to criminal activi-

United States v. Williams, 143 U.S.App. D.C. 16, 442 F.2d 738 (1970) ; and Kleinbart v. United States, 142 U.S.App.D.C. 1, 439 F.2d 511 (1970).

4. The Government further argues that the allegedly violent nature of at least one of the 1952 housebreaking convictions makes appellant ineligible for rehabilitative treatment by reason of Section 4251 (f) (1), which disqualifies "an offender who is convicted of a crime of violence." Without reference to the issue of the constitutionality of that provision, *see* No. 71–1179, United States v. Fersner, argued March 3, 1972, we think it clear that the provision, properly construed in the context of the statutory scheme, refers only to the offense for which sentence is about to be pronounced, and not to prior felony convictions. Our sole concern in this case, therefore, is with the validity of the two prior felonies disqualification of subsection (4), as applied to prior convictions which were not for narcotics offenses.

5. "The court must . . . be prepared to ascribe a purpose to each particular statutory classification and to coordinate these particular purposes with each other, with the more general purposes of the statute in question, and with other relevant statutes and public policies." Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1077 (1969). Disqualification of any offender who might be found to be rehabilitable is at odds with the central purpose of rehabilitation, and would therefore require justification by reference to an independent purpose.

ty. Thus, even the addict who contemplates that he would be eligible for Title II disposition must reckon with the fact that he will have a conviction on his record, as well as with the possibility that the District Court will deny him non-criminal treatment despite his statutory eligibility.

In preserving these deterrences, Congress must have thought them sufficient for the great majority of narcotics addicts, that is to say, for most addicts NARA would not create a ponderable increase in the incidence of criminal activity. However, as a matter of probability, the legislators could have thought that the reduced level of deterrence implicit in Title II would not be sufficient for some addicts, and that the full force of the criminal law would be necessary to prevent them from engaging in frequent criminal activity. That purpose, it might be argued, is advanced by the classification in subsection (4), on the assumptions that (1) persons who have committed two felonies are demonstrably less amenable to deterrence than those who have not, and (2) reducing the law's deterrent force for them would therefore create an unacceptable risk to the social order.

As far as appellant is concerned, however, the answer to that argument is found in footnote 13 of the *Watson* opinion. Appellant's prior convictions, like Watson's, occurred prior to the enactment of NARA in 1966. He was, therefore, from the very beginning precluded by subsection (4) from Title II disposition. On the other hand, in the case of an addict who did not have two felony convictions in 1966, the "chances of never having that second conviction are markedly enhanced" by NARA itself. 439 F.2d at 457, n. 13.

NARA operates to enhance those chances in two ways. First, as we noted in the *Watson* footnote, Title I of the Act, 28 U.S.C. §§ 2901–2906, allows some addicts charged with crimes to embark on a treatment program which, if successfully completed, results in the charges being dismissed. Although there is criminal conduct, there is no prosecution to conviction. Thus, an addict who committed two felonies prior to 1966 has two convictions on his record and is disqualified under subsection (4); but an addict who commits the same two felonies after 1966 may receive Title I disposition in respect of each, and thereby maintain a record free of convictions.

The second way in which NARA reduces the likelihood that an addict will get two felony convictions is by establishing treatment programs which were previously non-existent. Since 1966, an addict charged with a crime may, under both Titles I and II, receive treatment instead of a prison term, and be cured of his affliction. Since obtaining funds with which to purchase drugs is the reason for much of the crime committed by addicts,[6] an addict who engages in criminal activity and thereafter, through the treatment program made available by NARA, is cured of his addiction, is less likely to accumulate two felony convictions than he would have been before 1966.

For these two reasons, the classification established by subsection (4) is not a rational means of discriminating among addicts on the basis of responsiveness to the deterrent concept. So long as an addict, such as Watson or appellant, is brought within the terms of subsection (4) solely by reason of convictions rendered before 1966,[7] it cannot

---

6. The House of Representatives Report on NARA [No. 1486, May 9, 1966] states: "Narcotic addicts in their desperation to obtain drugs often turn to crime in order to obtain money to feed their addiction."
   It is not necessary to our rationale to assume that addicts are *compelled* to commit crimes in order to obtain funds to purchase drugs. It is sufficient to as-

sume that obtaining such funds is a strong motivating force, as the House Report indicates.

7. We do not necessarily imply that limiting subsection (4) to addicts with post-1966 felonies would be rational under this purpose. Given the fact, acknowledged in the House Report, that the need

be said that criminal sanctions are more necessary to deter his criminal propensities than they are for the mass of addicts who are eligible for Title II disposition.[8]

The third possible purpose which might be thought to justify subsection (4), relates, like the second, to the deterrence of criminal activity. While the second purpose is concerned with deterring two-time offenders from committing additional crimes, the third concerns the deterrence of addicts with clean records. It could be urged that subsection (4) helps to deter criminal activity by such addicts because knowledge that two convictions will disqualify them from future Title II disposition will deter them from committing felonies.

It is not necessary in this case to decide whether such an assumption is too far-fetched to satisfy the equal protection test, although the connection between subsection (4) and such third purpose is highly tenuous at best. The justification would apply only to convictions for offenses committed after the passage of NARA in 1966. Deterrence presupposes knowledge of the disqualification, and there could be no knowledge before 1966. Thus, the fact that appellant's prior convictions were rendered prior to 1966 again means that a possible rational purpose cannot validate the subsection's application to him.

We conclude, in short, that our *Watson* decision necessarily invalidates subsection (4) insofar as it is applied to addicts whose prior felonies were committed before 1966. We do not reach the questions of whether the subsection can constitutionally be applied to post-1966 felonies,[9] or whether there might be a distinction in that regard between violent and non-violent crimes.[10]

The extent and nature of appellant's prior criminal record may, of course, be relevant in the consideration by the sentencing court of whether he should be afforded Title II treatment. Since, however, we hold that it cannot rule out that consideration altogether, we vacate appellant's sentence, and remand the case for resentencing in which the District Court shall be free to consider appellant as an "eligible offender" within the meaning of Title II.

It is so ordered.

ROBB, Circuit Judge (concurring):

For the reasons stated in my dissent in Watson v. United States, 141 U.S. App.D.C. 335, 369, 439 F.2d 442, 475 (1970), I think the holding of that case is wrong; nevertheless I must recognize it as controlling here. Accordingly, I concur in the result reached by the majority.

---

for drugs is the reason for much of the crime committed by addicts, it may be irrational to assume that an addict's sensitivity to deterrent influences can be measured by anything other than the strength of his addiction.

8. This analysis also rules out retribution as a justifying purpose for subsection (4), at least as applied to addicts whose prior felonies were rendered before 1966. Although Congress might normally conclude that a three-time offender is more deserving of punishment than an offender who, while convicted of an identical crime, has a clean record, that conclusion is irrational when the difference between the two offenders may be explained by the accident of birth date, or the dates when they became addicted to narcotic drugs.

9. As we have noted, the second and third purposes discussed are rational, if at all, only as applied to post-1966 felonies. Without determining the issue, we should note additionally that, even if it were assumed that either or both of those purposes could justify a disqualification for post-1966 felonies, it does not follow that a court must necessarily read the statute in such a manner. While courts will sometimes be imaginative in imputing to Congress a purpose which will justify an *explicit* statutory classification, see Developments in the Law—Equal Protection, *supra* note 5 at 1078–1080, they should be more restrained when inferring the classification itelf, as they would be doing in applying subsection (4) only to addicts with post-1966 convictions.

10. *See* 439 F.2d at 456, n. 12.