Jacinta MORENO et al., Plaintiffs,

v.

The UNITED STATES DEPARTMENT OF AGRICULTURE et al., Defendants.

Civ. A. No. 615-72.

United States District Court, District of Columbia.

May 26, 1972.

Ronald F. Pollack, Roger Schwartz, New York City, John R. Kramer, Washington, D. C., for plaintiffs.

L. Patrick Gray, III, Asst. Atty. Gen., Harold H. Titus, Jr., U. S. Atty., Harland F. Leathers, Peter J. P. Brickfield, Attys., Dept. of Justice, for defendants.

Before McGOWAN, Circuit Judge, and SMITH and ROBINSON, District Judges.

## OPINION

McGOWAN, Circuit Judge:

Since the establishment of the food stamp program in 1964, eligibility for participation has been determined on a "household" basis. Initially, the term "household" was defined as "a group of *related or non-related* individuals, who are not residents of an institution or a boarding house, but are living as one economic unit sharing common cooking facilities and for whom food is customarily purchased in common."[1] (emphasis added). In January, 1971, however, Congress redefined "household" so as to include only groups of *related* individuals.[2] Pursuant to this amend-

---

1. 78 Stat. 703 § 3(e) (1964). The original act further provided that "[t]he term 'household' shall also mean a single individual living alone who has cooking facilities and who purchases and prepares food for home consumption." *Id.*

2. 7 U.S.C. § 2012(e), as amended, provides:

    The term "household" shall mean a group of related individuals (including legally adopted children and legally assigned foster children) or non-related individuals over age 60 who are not residents of an institution or boarding house, but are living as one economic unit sharing common cooking facilities and for whom food is customarily purchased in common. The term "household" shall also mean (1) a single individual living alone who has cook-

ment, the Secretary of Agriculture, on July 29, 1971, promulgated regulations 7 C.F.R. §§ 270.2(jj) and 271.3(a), which render ineligible a group of persons unless "they are all related to each other."[3]

There is little legislative history to illuminate the 1971 provision, since it first materialized, bare of committee consideration, during a conference committee's consideration of differing House and Senate bills. Its purpose, apparently, was to deny food stamps to "hippy" communes. See 116 Cong.Rec. 43325–27, 44430–32 (1970).

Plaintiffs are five groups of persons who allege that, although they satisfy the income eligibility standards, they have been denied federal food assistance because the persons in each group are not "all related to each other."[4] They bring a class action against the Department of Agriculture, its Secretary and two other departmental officials, seeking declaratory and injunctive relief against the enforcement of the 1971 amendment and its implementing regulations.

On April 6, 1972, a single district judge issued a temporary restraining order enjoining defendants "from denying, or causing to be denied, food stamp eligibility to the plaintiffs, and all other impoverished persons residing in households in which everyone is not related to one another, on the basis that all members in plaintiffs' and other persons' households are not related to one another." He also requested the convening of a three-judge District Court under 28 U.S.C. §§ 2282 and 2284. That was done, and the matter came on for hearing on plaintiffs' motion for a preliminary injunction and defendants' motion for summary judgment.[5] At that hearing, counsel for plaintiffs represented to us that he was prepared to have the merits of the complaint determined at this time, and orally moved for summary judgment. We grant that motion.[6]

## I

As a preliminary issue, defendants question the jurisdiction of a federal district court to entertain the complaint. Plaintiffs contend that jurisdiction can be founded on four separate sections of the Federal Judicial Code— 28 U.S.C. §§ 1331, 1332, 1337, and 1361—as well as on the Administrative Procedure Act, 5 U.S.C. § 702. We find at least one of these provisions clearly sufficient, namely, 28 U.S.C. § 1337, which grants to the district courts "original jurisdiction of any civil action

ing facilities and who purchases and prepares food for home consumption, or (2) an elderly person who meets the requirements of section 2019(h) of this title.

3. There is an exception, not here relevant, concerning households with individuals over 60 years of age.

4. Several of the five groups of plaintiffs would appear not to be "hippies" under conventional notions. Plaintiff Sheliah Ann Henjy, for example, lives with her husband, their three children, and one Sharon Sharp, who is twenty years old and unrelated to any of the Henjys. It is alleged that the Henjy family has cared for Sharon since November, 1970, when Sharon's mother, who was a next door neighbor of the family, forced the girl to leave home.

Plaintiff Jacinta Moreno, to take another example, is a 56-year old diabetic who allegedly requires special food and medical care, and who lives with a Mrs. Sanchez and the latter's three children. Mrs. Sanchez helps to care for plaintiff, and the two share living expenses.

5. Pursuant to 28 U.S.C. § 2284(3), the temporary restraining order has remained in effect pending further action by this court.

6. At the hearing before us, counsel for defendants stated that, if his motion was denied, he would have evidence to produce at trial. Although pressed by the court to do so, he did not, however, enlighten us as to the nature of that evidence, nor was he able to identify any disputed factual issues which were required to be explored and resolved. Neither are we able to discern any such issues necessitating further proceedings.

or proceeding arising under any Act of Congress regulating commerce . . .." [7]

■ Under Section 1337, "it is not requisite that the commerce clause be the exclusive source of Federal power; it suffices that it be a significant one." Murphy v. Colonial Federal Savings and Loan Association, 388 F.2d 609, 615 (2d Cir. 1967). In addition to the alleviation of hunger and malnutrition, a major congressional purpose in establishing the food stamp program was to "strengthen our agricultural economy, as well as [to] result in more orderly marketing and distribution of food." [8] Given that purpose, it is clear that the Commerce Clause was a "significant source of Federal power" behind the Food Stamp Act, and that this action, "arising under" that act, is properly within the jurisdiction of this court.

## II

We turn to the merits of plaintiffs' claims that (1) the regulations which have been issued by the Secretary of Agriculture are patently beyond the scope of the authority conferred upon him by the statute, and (2) the statute itself is invalid as violative of the First and Fifth Amendments.

■ As to the first of these contentions, we cannot agree with plaintiffs that the regulation denying eligibility to a group of persons unless "they are all related to each other" is in conflict with the statute. The Secretary appears to have taken the view that the term "household" necessarily connotes an indivisible unit, i. e., that it includes *all* of the persons who share a given set of cooking facilities. Plaintiffs assert

that, unless an alternative view is taken that an eligible household can consist of less than all the persons who share a kitchen, thereby making food stamps available to the related members of the group, the regulation is in conflict with the statute.[9] We do not think that the 1971 amendment forecloses the Secretary's construction of it. In fact, given the congressional reference to persons "living as one economic unit sharing common cooking facilities and for whom food is customarily purchased in common," 7 U.S.C. § 2012(e), the Secretary's approach seems well within the bounds of the legislative plan.

■ Turning to plaintiffs' constitutional challenge, we find the case appropriate for the application of traditional equal protection analysis.[10] As noted above, the stated congressional purposes in enacting the food stamp program are two in number: The improvement of the agricultural economy, and the alleviation of hunger and malnutrition. The challenged statutory classification (households of related persons versus households with one or more unrelated persons) is, however, irrelevant to both of those purposes. The relationships among persons constituting one economic unit and sharing cooking facilities have nothing to do with their abilities to stimulate the agricultural economy by purchasing farm surpluses, or with their personal nutritional requirements.

■ Since the statutory classification is not relevant to the stated purposes of the act, it is invalid under the equal protection clause, *unless* it is justifiable by reference to an independent purpose which a court may think it proper to im-

---

7. In resting our jurisdiction on Section 1337, we are not to be understood as either reaching or passing upon the availability of any of the other alleged jurisdictional bases.

8. 7 U.S.C. § 2011. *See also* the preamble to 78 Stat. 703 (1964); 7 U.S.C. §§ 2012 (b) and 2019(a); H.R.Rep.No.1228, 88th Cong., 2d Sess. (1964).

9. As plaintiffs point out, the effect of their prevailing on this point would be to pro-

vide partial relief to certain of their groups but not to all, i. e., a group consisting of five related members and one non-related person could receive food stamps for a household of five.

10. The equal protection clause of the Fourteenth Amendment is applicable to the federal government through the medium of the Fifth. *See* Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

pute to Congress. *See* Developments in the Law—Equal Protection, 82 Harv.L. R. 1065, 1077 (1969); United States v. Hamilton, 462 F.2d 1190 (D.C.Cir. decided April 6, 1972). In this case, the only independent purpose which has been or might be advanced is the fostering of morality.[11] Congress, it might be thought, denied federal food assistance to hippy communes in an attempt to combat the unconventional living arrangements popularly associated with them.[12] Defendants, citing the general rule that, in the field of economic and social legislation, judges should exercise their ingenuities to the utmost in order to save a statute against constitutional attack, would presumably have us ascribe such a purpose to Congress. For two reasons, however, we decline to do so.

■ First, interpreting the amendment as an attempt to regulate morality would raise serious constitutional questions. While Congress may have power to legislate against its conception of immorality in some contexts, *see* Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917) (interstate commerce), its power to do so at the level at which this statutory provision operates—in the household—is doubtful at best. Recent Supreme Court decisions make it clear that even the states, which possess a general police power not granted to Congress, cannot in the name of morality infringe the rights to privacy and freedom of association *in the home*. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Stanley v. Georgia, 394 U.S. 557, 89 S. Ct. 1243, 22 L.Ed.2d 542 (1969); Eisen-

stadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

The visible conflict with fundamental personal freedoms operates to remove this case from the reach of the general rule regarding economic and social legislation. In Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), a case cited by defendants as reaffirming the rule, the Supreme Court was careful to note that the statute there challenged did not affect "freedoms guaranteed by the Bill of Rights," and to indicate that its validity might have been suspect if it had. 397 U.S. at 484, 90 S.Ct. at 1161. Moreover, it is not the field occupied by the larger enactment which should be controlling, but rather the purpose and effect of the particular provision at issue. Here, although the Food Stamp Act is in the social and economic field, the challenged classification directly impinges on First Amendment freedoms; and the hypothesized purpose—the fostering of morality—is not "social and economic" in the traditional sense.

In short, while we would normally feel constrained to impute to Congress any legitimate purpose which might save a regulatory provision, prospective constitutional difficulties relieve us of that obligation here. Just as courts refrain from construing the language of a statute in a manner which would raise serious constitutional doubts, so should they hesitate before attributing to Congress a legislative purpose which palpably might have the same result.

■ Second, even were we to impute the purpose of fostering morality to Congress, we would not thereby be able

---

11. A purpose to discriminate against hippies cannot, in and of itself and without reference to the protection of morals or similar considerations in the public interest, justify the 1971 amendment. *See* Parr v. Municipal Court, 3 Cal.3d 861, 92 Cal.Rptr. 153, 479 P.2d 353 (1971). In order to qualify as "legitimate" under the equal protection clause, a legislative purpose must arguably be related to the improvement of the general welfare. *See* Developments in the Law, *supra* at 1081.

The mere intent to harm a politically unpopular group will not suffice.

12. The advancement of the work ethic is not the reason for the discrimination against communes in § 2012(e), since that purpose is accomplished through § 2014 (c). The latter section imposes, as a condition of eligibility to participate in the food stamp program, an obligation upon all able-bodied adults to register, and to be available, for employment.

to save the statute *as written*. The Congressional definition of household is overbroad with respect to prevailing notions of morality, since it in terms disqualifies all households of unrelated individuals, without reference to whether a particular group contains both sexes.[13] Were we, in other words, to attempt to justify the statute under a moral purpose, it would be necessary not only to impute to Congress an intent which does not appear in the legislative history, but also to write into the statute a classification (households containing unrelated individuals *of both sexes* as distinct from all other households) which is not presently there.

█ In such circumstances, courts are not obliged to stretch their imaginations to the farthest limits in order to save a statute.[14] When a court conceives a purpose neither declared in the statute itself nor explicitly identified in the legislative history, and then rewrites the statute so that it is precise with respect to that purpose, it treads perilously close to the congressional domain, since the definition of societal goals, and the choice of the regulatory classifications through which to achieve them, are normally determinations to be made in the first instance by the legislature. The doctrine that courts should endeavor to save the constitutionality of a statute was formulated in deference to the principle of separation of powers. We decline to follow that doctrine past the point at which it threatens to compromise the principle itself.

The fact is that we are confronted, as was the Secretary of Agriculture, with hasty, last-minute congressional action

—"a child born of the silent union of legislative compromise." Rosado v. Wyman, 397 U.S. 397, 412, 90 S.Ct. 1207, 1218, 25 L.Ed.2d 442 (1970). As an obvious afterthought to its reexamination of the food stamp program through the normal legislative processes, Congress apparently thought it prudent to exclude what it assumed to be an easily identifiable and easily separable group. That group, however, has proven to be not so facilely ascertainable; and the classification has achieved results which were apparently unintended.[15] We think that it is for Congress—and not this court—to address itself more precisely and upon fuller reflection to the true dimensions of the problem, to state its purpose explicitly, and to tailor its language to that purpose with precision. Until such reconsideration has occurred, there is little, if anything, that a court can do to save the classification. For the foregoing reasons, we hold that the 1971 amendment redefining "household" denies plaintiffs equal protection of the laws.

### III

█ There is a final question concerning the nature of the relief to which plaintiffs are entitled. Counsel for defendants in oral argument before us urged the surprising, not to say startling, proposition that, in the event the classification is held to be unconstitutional, this court has no choice but to enjoin the operation of the entire food stamp program. We disagree.

There is no indication that Congress regarded the relational requirement of

---

13. One of the groups of plaintiffs, for example, consists, according to undisputed affidavits, of two male roommates who live together in order to share expenses for shelter.

14. The Court of Appeals for this Circuit has recently stated that "[w]hile courts will sometimes be imaginative in imput-

ing to Congress a purpose which will justify an *explicit* statutory classification, . . . they should be more restrained when inferring the classification itself. . . . " United States v. Hamilton, *supra*, 462 F.2d at 1194.

15. *See* 117 Cong.Rec. S6451–52 (daily ed. May 10, 1971).

its amended definition of "household" as the foundation stone of the entire statutory scheme. To the contrary, it was an afterthought, suggested for the first time in conference committee after both houses had reaffirmed the fundamental outlines of the program. What Congress *did* unmistakably regard as essential was the continuing effectuation of its two major purposes—the alleviation of hunger and the improvement of the health of the agricultural economy. The proper accommodation between the rights of plaintiffs and the purposes of Congress is, therefore, to allow the food stamp program to continue, but to enjoin the enforcement of the amended definition to the extent that it requires eligible households to be comprised solely of "related" individuals.

Such relief will not require the expenditure of public funds to a greater extent than now authorized, but will merely end the unconstitutional discrimination in the use of monies already appropriated which was briefly in effect before judicial intervention was sought. Nor will it do violence to the wording of the statute. Deleting references to the concept of relation from the amended Section 2012(e) renders it essentially identical to the definition of household previously in effect.[16]

By separate order, therefore, we issue a declaratory judgment invalidating 7 U.S.C. § 2012(e), insofar as it operates to deny food stamps to otherwise eligible households by reason of the fact that they contain one or more unrelated individuals; and we enjoin defendants from denying food stamp eligibility to plaintiffs, and to all other persons otherwise eligible, for that reason.

16. *Compare* (a) 7 U.S.C. § 2012(e) with the relevant words and phrases deleted ["related"; "including legally adopted

children and legally assigned foster children, or nonrelated individuals over age 60"] *with* (b) 78 Stat. 703 § 3(e).