**Robert Edward MARSHALL, Plaintiff-Appellant,**

v.

**J. J. PARKER, Warden, United States of America, Defendants-Appellees.**

**No. 72-1479.**

United States Court of Appeals, Ninth Circuit.

Nov. 15, 1972.

As Amended Dec. 13, 1972.

Certiorari Granted Feb. 26, 1973. See 93 S.Ct. 1429.

Frank R. Ubhaus, Asst. Federal Public Defender (argued), James F. Hewitt, Federal Public Defender, San Francisco, Cal., for plaintiff-appellant.

Fredric F. Tilton, Asst. U. S. Atty. (argued), Chester G. Moore, Asst. U. S. Atty, James L. Browning, U. S. Atty., San Francisco, Cal., for defendants-appellees.

Before BARNES and TRASK, Circuit Judges, and BATTIN, District Judge.*

TRASK, Circuit Judge:

On February 4, 1971, Robert Marshall, appellant, was sentenced to ten years imprisonment following his plea of guilty of the offense of entering a bank with the intent to commit a felony in violation of 18 U.S.C. § 2113(a). There was a recommendation that he receive treatment for his narcotic addiction. On October 15, 1971, he filed a petition *in propria persona* pursuant to 28 U.S.C. § 2255 to vacate that sentence as illegal.[1] Following appointment of counsel and oral argument on the petition it was denied on February 3, 1972, and this appeal is from the order of denial.

It was the contention of appellant in his section 2255 petition that the sentencing court erroneously denied him consideration for treatment as a narcotic addict under Title II of the Narcotic Addict Rehabilitation Act of 1966 (NARA), 18 U.S.C. §§ 4251–4255.[2] The order of the trial court denying the petition apparently relied on 18 U.S.C. § 4251(f)(4) which excludes from the coverage of the Act, " . . . an offender who has been convicted of a felony on two or more prior occasions." The court noted in its order that appellant had a record of prior convictions for burglary, forgery, and possession of a firearm.

Before the trial court and here, appellant relies upon decisions of the Court of Appeals of the District of Columbia which hold that the two prior felony exclusion of Section 4251(f)(4) is unconstitutional under the equal protection concept embodied in the Due Process Clause of the Fifth Amendment. Watson v. United States, 141 U.S.App.D.C. 335, 439 F.2d 442, 457 (1970), and the cases which have followed it,[3] United States v. Williams, 143 U.S.App.D.C. 16, 442 F.2d 738 (1970); and Chicquelo v. United States, 146 U.S.App.D.C. 381, 452 F.2d 1310 (1971). Because the two prior felony convictions in *Watson* were for violations of narcotics laws there was some conjecture that the rationale of that case was limited to like facts. It now appears that such is not the case, United States v. Hamilton, 149 U.S.App. D.C. 295, 462 F.2d 1190 (D.C.Cir. 1972), and that any two prior felony convictions are within the intendment of the *Watson* rule of unconstitutional exclusion.[4]

---

* Honorable James F. Battin, United States District Judge, for the District of Montana, sitting by designation.

1. We treat the Section 2255 petition as a motion for correction of an illegal sentence under Rule 35, Fed.R.Crim.P., Brooks v. United States, 457 F.2d 970 (9th Cir. 1972).

2. Title II applies to those classified under the Act as "eligible offenders" constituting addicts who have been convicted of an offense against the United States and are otherwise eligible for treatment looking to rehabilitation in lieu of punishment for crime. *See* n. 6, *infra*.

3. The problem posed by Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), of conviction and punishment because of the "status" of being an addict is not presented here either directly on the record or tangentially as the *Watson* court considered it. Appellant relies principally upon Part IV of the *Watson* opinion. 439 F.2d at 454.

4. In *Hamilton* the court assumes three possible justifications for the two prior felony disqualification and rejects each under the equal protection argument. The first assumption rejected is that the two prior felony disqualification eliminates those who are not likely prospects for rehabilitation. This rejection is based upon *Watson*. That case, however, dismisses the classification because it was not contemplated by a Presidential Commission Report and because the disqualification is at odds with what the court understands Congressional purpose to be. 439 F.2d at 456. While not disagreeing that the purpose of the Act is rehabilitation, we are unable to discern Congress' purpose with respect to the two prior felony exclusion as being any different

█ We do not agree that Congress in enacting Title II of the NARA may not constitutionally limit the persons eligible to receive its benefits as it has seen fit to do.

Let us first consider the Act itself. Title I,[5] 28 U.S.C. §§ 2901–2906, provides for civil commitment and rehabilitation of narcotic addicts charged with an offense but prior to prosecution. Under it if the district court believes that an eligible person is an addict, the court may advise him that the prosecution of the criminal charge will be held in abeyance if he elects to submit to an immediate examination to determine whether he is an addict *and is likely to be rehabilitated through treatment.* If the election is made and he is found qualified, he will be civilly committed to the Surgeon General for treatment. If the treatment is successful over a period of three years the criminal charge will be dismissed, but if not, prosecution will be resumed. Provision is also made for supervisory aftercare.

Title II, 18 U.S.C. §§ 4251–4255, with which we are here concerned, encompasses treatment of an individual who has been convicted of an offense against the United States. If the court believes that an eligible offender[6] under that title is an addict, the court may place him in the custody of the Attorney General for an examination to determine whether he is an addict and is likely to be rehabilitated through treatment. If so, he may be committed to the Attorney General for treatment for an indeterminate sentence not to exceed ten years, or the maximum sentence that could otherwise be imposed.

Title III, 42 U.S.C. §§ 3411–3426, provides for civil commitment of persons not charged with any criminal offense. This procedure is initiated by an addict who desires treatment, or by a related individual. A petition may be filed in the United States District Court to commit such person to the Surgeon General for treatment in a hospital of the Public Health Service. Again, it must be determined that he is a narcotic addict *"who is likely to be rehabilitated through treatment."*

In Title III of the Act, 42 U.S.C. §§ 3411–3426, we find no exclusion based upon prior conviction. 42 U.S.C. § 3412 provides: "(a) Except as otherwise provided in section 3421 of this title, whenever *any* narcotic addict desires to obtain treatment for his addiction

---

than what Congress plainly says it to be. Nor does this classification defeat the Congressional purpose. For the same reason we reject any distinction based upon post 1966 felony convictions as opposed to prior 1966 felony convictions.

5. Public Law 89–793; 80 Stat. 1438 should be consulted for an overview since it is the only source where all three titles of the NARA are found together.

6. 18 U.S.C. § 4251(f) states in pertinent part:

"(f) 'Eligible offender' means any individual who is convicted of an offense against the United States, but does not include—

"(1) an offender who is convicted of a crime of violence.

"(2) an offender who is convicted of unlawfully importing or selling or conspiring to import or sell a narcotic drug, unless the court determines that such sale was for the primary purpose of enabling the offender to obtain a narcotic drug which he requires for his personal use because of his addiction to such drug.

"(3) an offender against whom there is pending a prior charge of a felony which has not been finally determined or who is on probation or whose sentence following conviction on such a charge, including any time on parole or mandatory release, has not been fully served: *Provided,* That an offender on probation, parole, or mandatory release shall be included if the authority authorized to require his return to custody consents to his commitment.

"(4) an offender who has been convicted of a felony on two or more prior occasions.

"(5) an offender who has been committed under title I of the Narcotic Addict Rehabilitation Act of 1966, under this chapter, under the District of Columbia Code, or under any State proceeding because of narcotic addiction on three or more occasions." (Emphasis in original).

. . ." a petition may be filed. (Emphasis supplied).

42 U.S.C. § 3421 then states: "The provisions of this subchapter shall not be applicable with respect to any person against whom there is pending a criminal charge, whether by indictment or by information, which has not been fully determined or who is on probation or whose sentence following conviction on such a charge, including any time on parole or mandatory release, has not been fully served, except that such provision shall be applicable to any such person on probation, parole, or mandatory release if the authority authorized to require his return to custody consents to his commitment."

It appears from these statutory sections that a narcotic addict with two or more prior felony convictions would not be excluded from treatment of his addiction under Title III of the NARA, unless there was a criminal charge pending against him at the time he petitioned. This is evidence that Congress did not intend to totally exclude persons within the class of twice-prior-convicted felons from rehabilitation treatment, but rather, in light of the overall purpose of rehabilitation, Congress wanted to assure that the program was entered into with a sincere, good-faith desire for treatment and not with a motive merely to escape criminal punishment.

Thus, in each of the three titles, *i.e.*, Title I applying to addicts charged with a criminal offense, Title II applying to those convicted, but not yet sentenced and, Title III applying to those not charged with a criminal offense, the reach of the Act is to those who are not only addicts but also *are "likely to be rehabilitated through treatment."* This is consistent with the declared policy of Congress in enacting this legislation that:

"It is the policy of the Congress that certain persons charged with or convicted of violating Federal criminal laws, who are determined to be addicted to narcotic drugs, *and likely to be rehabilitated through treatment,*

should, . . . be civilly committed for confinement and treatment designed to effect their restoration to health, and return to society as useful members.

"It is the further policy of the Congress that certain persons addicted to narcotic drugs who are not charged with the commission of any offense should be afforded the opportunity, through civil commitment, for treatment, in order that they may be rehabilitated and returned to society as useful members and in order that society may be protected more effectively from crime and delinquency which result from narcotic addiction." 42 U. S.C. § 3401; 1966 U.S.Code Cong. & Adm.News at 1670. (Emphasis supplied).

The Act treats each of these three categories a little differently as to length of treatment and procedures for obtaining it, but in each it applies to those addicts likely to be rehabilitated. Congress could, it is submitted, have broadened the scope of the Act to addicts "who by any possibility" might be rehabilitated through treatment, and pursuant to that policy have eliminated all or almost all exclusions to eligibility. It did not see fit to do so although the legislative history indicates that it had the technical advice and resources of the Attorney General of the United States, the Surgeon General of the Public Health Service, the Director of the Bureau of Prisons of the Department of Justice, and the enforcement officials of the Secretary of the Treasury, in drafting the legislation. It may be fairly presumed, therefore, that the classifications as to eligibility were both considered and felt to be logically suited to the purposes which Congress sought to obtain by the enactment.

Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), tells us that:

"To decide whether a law violates the Equal Protection Clause, we look, in essence, to three things: the char-

acter of the classification in question; the individual interests affected by the classification; and the governmental interest asserted in support of the classification." 405 U.S. at 335, 92 S.Ct. at 999.

It is clear that standards used for the purpose of evaluating classifications and justifications for them vary in accordance with the interests affected. 405 U.S. at 335, n. 6, 92 S.Ct. at 999. In Dunn v. Blumstein, *supra,* where the fundamental right to vote was granted to some citizens and denied to others, the Court was required to determine whether the exclusions were necessary to promote a "compelling" state interest. 405 U.S. at 337, 92 S.Ct. at 1000. *See also,* Shapiro v. Thompson, 394 U.S. 618, 629, 631, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

■ Similar concern becomes necessary where distinctions are based upon wealth or race. McDonald v. Board of Education, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

■ Here there is no suspect classification based upon wealth or race, nor can we believe that one who becomes addicted to narcotics has a "fundamental right" to rehabilitation at public ex-

pense.[7] That being true we consider the constitutional question from the standpoint of the normal standard used in determining the validity of equal protection claims. Thus reasonable classifications of persons may be made and each class dealt with differently if there is some relevance to the basic purpose for which the classification is made. Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). As the Court said in Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955):

"Evils in the same field may be of different dimensions and proportions, requiring different remedies. . . . Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others. . . . The prohibition of the Equal Protection Clause goes no further than the invidious discrimination."

*Accord,* Jefferson v. Hackney, 406 U.S. 535, 546, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972).

■ NARA has as its basic purpose the treatment of narcotic addicts who are likely to be rehabilitated through that treatment.[8] Standards of eligibility may well have been developed by the

7. We recognize that there is a constitutional right to treatment for persons involuntarily committed to a public hospital where Congress has provided the means to effectuate this treatment. Rouse v. Cameron, 125 U.S.App.D.C. 366, 373 F.2d 451 (1966). We also note that where an institution is providing a treatment program, one held in noncriminal custody may not be denied the right to treatment. Martarella v. Kelley, 349 F.Supp. 575 (S.D. N.Y.1972).

8. "The committee has carefully considered this legislation and in recommending it finds that it provides the flexibility to enable Federal authorities to treat the unfortunate addict who is capable of rehabilitation to render assistance in a manner which will enable him to extricate himself from an otherwise hopeless

and repetitious pattern of addiction and crime. The procedures provided by the bill in titles I, II, and III, do not essentially change the authority being exercised by law enforcement officials or the courts in dealing with persons charged with criminal offenses or convicted of such offenses. Rather the bill provides alternatives which provide a needed flexibility in the law. The practical effect of the implementation of the law provided for in the bill, is that strict punishment can be meted out where required to the hardened criminal, while justice can be tempered with judgment and fairness in those cases where it is to the best interest of society and the individual that such a course be followed." H.R.Rep.No. 1486, 89th Cong., 2d Sess.; 1966 U.S. Code Cong. & Adm.News at 4250.

experts in the field with an eye toward restricting eligibility in the beginning to those most likely to be rehabilitated and who would appear to bring to the program the greatest promise for its success, consistent with time, money, trained personnel and facilities which the Congress believed were available for it. For these reasons (or others) the Congress might well have established a policy to exclude, at least at the start, those whose known criminal careers made them undue risks for rehabilitation, and undue risks to the success of the program and to others in it.

Opinions might differ as to where the lines should be drawn. Some might raise the limits of eligibility by admitting those with a record of only one prior conviction for a crime of violence and raising the exclusion based on prior felonies from two to five and eliminating prior narcotics counts from the standard. Congress chose, for reasons which we cannot determine to be arbitrary, to establish the lines of eligibility where we now find them. Here the Congress is not depriving citizens of rights which they have always held and rights which are fundamental to them as members of our society. The court in *Watson* would simply extend the program farther. So might we, were we acting in a legislative capacity. As noted by the Court in Jefferson v. Hackney, *supra:*

> "This Court emphasized only recently, in Dandridge v. Williams, 397 U.S. 471, 485 [90 S.Ct. 1153, 1161, 25 L. Ed.2d 491] (1970), that in 'the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.' A legislature may address a problem 'one step at a time,' or even 'select one phase of one field and apply a remedy there, neglecting the others.' Williamson v. Lee Optical Co., 348 U.S. 483, 489 [75 S.Ct. 461, 465, 99 L.Ed. 563] (1955). So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket."

We cannot find in the context of this Act and its standards of eligibility anything departing from the rational or any discrimination which may be considered "invidious." Judgments may differ, but considered differences of opinion as to proper bounds of legislative action do not amount to irrational conduct. As Justice Black said in concurring in Powell v. Texas, 392 U.S. 514, 539–40, 88 S.Ct. 2145, 2158, 20 L.Ed.2d 1254 (1968), where the Court labored over the impossible complexities of the criminal law as applied to alcoholism:

> "Even the medical authorities stress the need for continued experimentation with a variety of approaches. I cannot say that the States should be totally barred from one avenue of experimentation, the criminal process, in attempting to find a means to cope with this difficult social problem. From what I have been able to learn about the subject, it seems to me that the present use of criminal sanctions might possibly be unwise, but I am by no means convinced that *any* use of criminal sanctions would inevitably be unwise or, above all, that I am qualified in this area to know what is legislatively wise and what is legislatively unwise." (Emphasis in original).

The judgment is affirmed.