**UNITED STATES of America**

v.

**Israel FERSNER, Appellant.**

**UNITED STATES of America**

v.

**Clifton D. McELVEEN, Appellant.**

**Nos. 71–1179, 71–1572 and 71–1674.**

United States Court of Appeals,
District of Columbia Circuit.

No. 71–1179—Argued March 3, 1972.

Decided June 12, 1972.

Rehearing Denied July 26, 1972 in
71–1572 and 71–1674.

Mr. Joel I. Hoffman, Washington, D. C. (appointed by this Court), for appellant in No. 71–1179.

Mr. Raymond Banoun, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry and Warren L. Miller, Asst. U. S. Attys., were on the brief for appellee in No. 71–1179. Mr. Harold H. Titus, Jr., present U. S. Atty., also entered an appearance for appellee in No. 71–1179.

Mr. Daniel G. Grove, Washington, D. C. (appointed by this Court), was on the brief for appellant in Nos. 71–1572 and 71–1674.

Messrs. Julian Tepper, Brooklyn, N. Y., and W. Anthony Fitch, Williamsburg, Va., were on the brief for Nation-

al Law Office of the National Legal Aid and Defender Assn., as amicus curiae in support of appellant in No. 71–1572.

Messrs. Harold H. Titus, Jr., present U. S. Atty., and John A. Terry, Broughton M. Earnest, James E. Sharp, David C. Woll, and Charles E. Brookhart, Asst. U. S. Attys., were on the brief for appellee in Nos. 71–1572 and 71–1674. Mr. Thomas A. Flannery, U. S. Atty. at the time the record was filed, also entered an appearance for appellee in Nos. 71–1572 and 71–1674.

Before LEVENTHAL and ROBINSON, Circuit Judges, and JAMES F. GORDON,* Chief Judge, U. S. District Court for the Western District of Kentucky.

LEVENTHAL, Circuit Judge:

■ In these appeals we hold that the statutory exclusion of persons convicted of a violent crime from treatment under Title II of the Narcotics Addict Rehabilitation Act does not violate their constitutional rights to equal protection of the law.

The Narcotics Addict Rehabilitation Act of 1966 (NARA) was enacted to provide

> certain individuals charged with, or convicted of, violating Federal laws . . . [with] an opportunity for treatment if it is determined that they are narcotic addicts and such treatment is likely to result in their rehabilitation and return to society as useful members.

42 U.S.C. § 3401. Title II of the Act provides for post conviction alternatives to ordinary criminal sentencing, 18 U.S.C. §§ 4252, 4253. It makes provision for the offender's conditional release after he has spent at least six months in the program and after "the offender has made sufficient progress to warrant" it. 18 U.S.C. § 4254.

The benefits of Title II are available, however, only to "eligible offenders,"

which the Act defines, in pertinent part as:

> any individual who is convicted of an offense against the United States, but does not include—
>
> (1) an offender who is convicted of a crime of violence. * * *

18 U.S.C. § 4251(f). Appellant Fersner pleaded guilty to robbery and carrying a dangerous weapon; appellant McElveen pleaded guilty to armed robbery and petit larceny. Both are thus "convicted of a crime of violence" as that term is defined in NARA, and they are therefore ineligible for treatment under Title II. Their chief submission on this appeal is that this exclusion, by failing to take account of appellants' potential for rehabilitation, deprives them of the equal protection of the law. We find the exclusion provision at issue is supported by rational considerations and is constitutional, and we therefore affirm.

## I.

"Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." Baxstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 763, 15 L.Ed.2d 620 (1966). This case invites our attention to the reasonableness of the classification in the light of the Government interest which is sought to be promoted. In drafting NARA, as appellant Fersner recognizes (Br. p. 6) "Congress . . . attempted to walk a thin line between public safety and welfare on the one hand, and the needs of a medically sick narcotics addict on the other." This compromise between the needs of public safety and the need of criminal narcotics addicts for treatment contains, in our view, the key to the reasonableness of this exclusion provision.

The amicus brief of the National Legal Aid and Public Defender Service, submitted in behalf of appellant Mc-

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1970).

Elveen, discourses, persuasively, on the likelihood that narcotics addicts will come to commit crimes of violence.

The other side of the coin, however, is that legislation dealing with narcotics rehabilitation programs, may fairly take into account the prospects of failure. A recent paper on the treatment of drug addiction, prepared by Dr. Jonathan Cole and the staff of the National Institute of Mental Health, reports on numerous narcotics control and treatment programs which have been tried across the country and in other countries.[1] While many of these programs appear to hold considerable promise, a striking feature of nearly every one of them has been an uncomfortably high failure rate.

When the adjective "problematic" is an appropriate, if not optimistic, description of the cure-rate of a rehabilitative program, and the prospects are clouded for the ultimate cure of any particular patient entering into treatment, there is an imponderable that identifies an important public policy consideration. This is heightened by Title II's conditional release provisions. In enacting NARA, Congress took what was essentially a calculated risk. Some offenders would profit from NARA treatment, others would not. As to certain offenders Congress felt that the risk that a given subject would not be permanently rehabilitated was an acceptable risk. As to those established, beyond a reasonable doubt, as having committed crimes of violence, Congress may reasonably have considered that the risks connected with permitting NARA treatment and release

were simply too great. It may well be that these offenders are just as likely as those who are accepted to be a good risk for rehabilitation, following NARA treatment. But in the balancing of opportunities and risks, the established violence tips the public interest scale, on the ground of greater likelihood of public harm if their release discloses that the rehabilitation was more hope than accomplishment.

Both appellants assert that the violent crimes exclusion can only be based on a Congressional presumption that violent criminals are less amenable to ultimate rehabilitation than other criminals, a presumption which we held was not rational in connection with another exclusion provision in this Title in Watson v. United States, 141 U.S.App.D.C. 335, 439 F.2d 442 (en banc, 1970).[2] We think that appellants' view underestimates the number of interests which Congress weighed in enacting NARA. Congress was not interested solely in assuring that those persons who were made eligible for NARA treatment would be able to benefit from it: Congress also considered, and quite properly, the factor of public safety. When then Attorney General Katzenbach testified in support of the bill that became NARA he candidly avowed that there were conflicting interests and objectives.[3]

The public interest in discriminating between risks is not to be gainsaid by replying that an offender is not eligible for release until he has made satisfactory progress, and that if an addict who

---

1. President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Narcotics and Drug Abuse 135 (1967).

2. See also United States v. Hamilton, 149 U.S.App.D.C. 295, 462 F.2d 1190 (April 6, 1972). Both *Watson* and *Hamilton* concerned 18 U.S.C. § 4251(f) (4).

3. Hearings on H.R. 9051, H.R. 9176 et seq., before Subcommittee No. 2, Committee on the Judiciary, Civil Commitment and Treatment of Narcotics Addicts, 89th Cong., 1st and 2d Sess., ser. 10, at 93 (1965–66) :

We are trying to draw a line here, Mr. Congressman. We feel that the approach of strict punishment with respect to narcotics offenders has been successful. We do not want to abandon that approach. . . . We also feel that addiction is such a problem in our society that we ought to try to treat it and do something about it. So the bill tries to run a line between those objectives. There is some incompatibility, but we try to run a line between them. This is one of the compromises.

had committed violent crimes had made satisfactory progress, he would no longer be dangerous. Guesses, however educated, about the future are subject to inevitable error. Until clinical means of prediction become very much more precise than they are now, it is certainly not irrational to opt for caution.[4]

## II.

■ Our conclusion that appellants are ineligible for Title II treatment does not altogether deprive them of the possibility of rehabilitative therapy prior to their return to the community. Title III of NARA would allow appellants to take advantage of therapeutic regime substantially similar to that provided for in Title II. The difference is that for Title III treatment, offenders must first serve their minimum sentences. Title III treatment is available only in conjunction with parole, with requirement for consent of the parole authorities. See 42 U.S.C. §§ 3411–3426, especially § 3421. This plan does not allow for the possibility of a conditional release, nor is it a substitute for a sentence of imprisonment. Reasonable men could differ as to the wisdom of Congress's plan, but its rationality is manifest. We have concluded that substantial reasons support this congressional classification, and having so concluded, our judicial function is at an end.[5]

Affirmed.

4. See P. Meehl, Clinical Versus Statistical Prediction (1954).

We are not aware of any scientific demonstration that rehabilitated addicts who were guilty of violent crimes tend, if they return to the habitual use of narcotics, to return also to violent crime. Nor can it be certain that a non-violent criminal, if he relapses after his addiction is "cured," will not progress to violent crimes. In the absence of such scientific information, we cannot say that it is irrational for Congress to project that when a former drug addict relapses into drug use, he is also likely to engage in violent criminality, if such conduct had appeared in the past as a behavioral pattern.

5. Appellant McElveen's brief asks us, in considering the equal protection issue, to keep in mind the spirit of the Eighth Amendment, prohibiting "cruel and unusual punishment." We find that the Eighth Amendment does not bar criminal punishment of narcotics addicts who commit violent crimes, even though they may have done this to obtain the funds to feed their habit. The society's interest in self-preservation permits delimitation of defenses on grounds of policy, that can not be justified in terms of strict logic.