**UNITED STATES of America**

v.

**Edgar C. THOMAS, a/k/a Elgar Thomas, Appellant.**

**UNITED STATES of America**

v.

**Elgar C. THOMAS, Appellant.**

**Nos. 72–1354, 72–1823.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 9, 1973.

Decided Aug. 21, 1973.

J. William Doolittle, Washington, D. C.(appointed by this Court), for appellant.

Richard L. Beizer, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Roger M. Adelman, Asst. U. S. Attys., were on the brief for appellee.

Before LEVENTHAL and ROBB, Circuit Judges, and JAMESON,* Senior District Judge for the District of Montana.

ROBB, Circuit Judge:

In January 1970 the appellant pleaded guilty to a charge of armed robbery, and was sentenced under the Youth Corrections Act. (Criminal No. 1859–69 in the United States District Court for the District of Columbia). In March of 1971, while serving his sentence at a "half-way house" he escaped from custody. On June 17, 1971 he was arrested for the armed robbery of a Safeway store which took place on that day. Thereafter in Criminal No. 1349–71, he was indicted for his escape (18 U.S.C. § 751(a)) and in Criminal No. 1516–71, for the Safeway robbery. On February 9, 10 and 11, 1972 he was tried and convicted on the second indictment, which in various counts charged him with armed robbery, assault with a dangerous weapon, possession of a prohibited weapon (a sawed-off shotgun) and possession of an unregistered firearm. He pleaded guilty to the escape charge. Although he was twenty years old, the district judge sentenced him as an adult on both indictments, holding that under 22 D.C. Code § 3202(a)(2) and (d)(1) (Supp.V, 1972) he was ineligible for sentencing under the Federal Youth Corrections Act. This statute provides that the Federal Youth Corrections Act shall not apply to any person who is "convicted more than once" of having committed a crime of violence in the District of Columbia.

On these appeals the appellant challenges the District Court's refusal to consider him for sentencing under the Youth Corrections Act. The appellant also contends that the District Court's instruction with respect to identification testimony was erroneous, in that it did not comply with the instructions suggested in Macklin v. United States, 133 U.S.App.D.C. 139, 409 F.2d 174 (1969), and United States v. Telfaire, 152 U.S. App.D.C. 146, 469 F.2d 552 (1972). The instruction given was the "model instruction" on mistaken identity. The appellant's trial counsel stated that he was "satisfied" with the charge as given.

The proof for the government at trial was that on the morning of June 17, 1971 Officers James and Timmons, on patrol in "casual clothes" noticed Thomas standing near the Safeway store at 716 Kennedy Street, N.W. in Washington. Thomas was dressed in a brown jacket and not wearing a hat. Another man was with him. The attention of the officers was attracted to Thomas because he was "acting rather fidgety, shrugging his shoulders up and down * * * as though he was in a nervous condition." They watched Thomas and his companion walk to the Safeway and saw Thomas go in while the other man stood outside. When the officers approached, the other man walked off and disappeared. Deciding to take a closer look at Thomas the officers went to the door of the Safeway where they encountered Thomas, backing out carrying two brown paper bags (later found to contain money) and a sawed-off shotgun. At this point he was within twelve inches of the policemen. He pointed the shotgun at them whereupon they "froze" and watched him go down the street. When he had "gotten a little ways down the street" the officers told him to halt, that they were police officers. Thomas "wheeled around" with his gun, pointing it at the officers. The officers shot at

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

him several times but missed, and Thomas ran down the street with the officers close behind. Twice they momentarily lost sight of him when he turned a corner, but after the second turn a citizen pointed to an apartment house at 614 Longfellow Street, indicating that Thomas had entered this building, which was about a block and a half from the Safeway store.

The two officers and others who had joined the chase stationed themselves around the apartment house, covering the exits. After a wait of about 50 minutes for reinforcements, the police searched the building. The search finally turned up Thomas, in a dark crawl space under a ground-floor staircase. This space measured approximately three feet by three feet. Thomas had discarded his jacket, which was "pushed back into the corner where the stairs met the floor." Officer Timmons, one of the officers who had chased Thomas, immediately identified him. The shotgun, loaded, was found in the alley next to the apartment house. The bags containing money taken from the Safeway store were recovered on the street where they had been dropped by the robber.

Two Safeway clerks described the robbery. They testified that the robber was a Negro male about five feet, four or five inches tall, with a "bush" or "Afro" haircut, wearing a tan jacket. Pointing a shotgun at them he ordered them to place the money from their cash registers in paper bags, and they complied. He then backed out of the store, still pointing the shotgun at them. They heard the firing by the police, saw the robber running down the street, pursued by the police, and saw him drop the bags of money in the street. Seven days after the appellant's arrest they viewed him at a police lineup, but failed to identify him; on the contrary, they identified another man, who was wearing a "bush" haircut. The record discloses that on June 17, the day of the robbery, the appellant did have a "bush" haircut, but three days later—that is, before the lineup—he had his head shaved.

The appellant testified that he had gone to the apartment house on Longfellow Street to visit a friend, one Spunky. He did not remember Spunky's last name and had not seen him for about a year and a half. After entering the building through the back door he went to the third floor, knocked on the door of an apartment, asked if Spunky was in, found he was not there, and headed back downstairs when someone in the apartment told him to go away. He thought perhaps he was on the wrong floor. When he got to the second floor he heard people hollering "police" and saying "he went that way", and he heard someone say "check this place, check that place; maybe he's down there", so he "hid behind the first floor steps". He admitted that his coat was found underneath the steps. He said that when Officer Timmons identified him as the man who robbed the Safeway he was "shocked". He explained that he had his hair cut at the jail before the lineup because a doctor "said there was evidence of an insect or growth from the middle of my head".

██ We think the court's instruction on the identification testimony was adequate. In any event counsel did not object to it; and the evidence of the appellant's guilt was overwhelming.

In our opinion the district judge was also correct in ruling that the appellant was ineligible for sentencing under the Youth Corrections Act.

Section 3202(a)(2) of Title 22, D.C. Code (Supp. V, 1972) provides that a person who commits a crime of violence when armed "shall, if he is convicted more than once of having so committed a crime of violence in the District of Columbia, be sentenced," to a certain mandatory period of imprisonment. 22 D.C.Code § 3202(d)(1) provides that the Federal Youth Corrections Act "shall not apply with respect to any person sentenced under paragraph (2) of subsection (a)"—that is to any person who "is convicted more than once of

having * * * committed a crime of violence" when armed.[1]

Since the appellant was twenty years of age when sentenced he was a "youth offender" under the terms of the Federal Youth Corrections Act, 18 U.S.C. § 5006(e)(1970) and entitled to consideration under that Act unless 22 D.C.Code § 3202(d)(1) made him ineligible for such treatment.

The appellant contends that to be one who "is convicted more than once of having * * * committed a crime of violence" within the meaning of 22 D.C.Code § 3202(a)(2) (Supp. V, 1972) a person must have been convicted more than once after the effective date of that provision. Since the effective date was July 29, 1970 (Pub.L. No. 91–358, July 29, 1970, sec. 901(b)(3)) and the appellant's first conviction for a crime of violence occurred in January 1970 he says that sections 3202(a)(2) and (d)(1) do not apply to him, and he is therefore eligible for consideration under the Youth Corrections Act. We cannot agree.

The legislative history of section 22–3202 makes it plain that Congress intended the phrase "is convicted more than once" to include a conviction occurring before the effective date of that section. As reported by the House Committee on the District of Columbia, the bill amending section 22–3202 provided for mandatory minimum sentences for "a person [who] is convicted more than once of having committed a crime of violence in the District of Columbia" when armed. The Committee Report stated that "this section would be applicable to a person convicted of an offense committed after the effective date. Thus, if a person was convicted of an armed crime of violence under D.C.Code, section 22–3202,

---

1. 22 D.C.Code § 3202 (Supp. V, 1972), as amended by section 205 of the District of Columbia Court Reform Act, 85 Stat. 600, provides in pertinent part as follows:

(a) Any person who commits a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm (or imitation thereof) or other dangerous or deadly weapon (including a sawed-off shotgun, shotgun, machinegun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, or metallic or other false knuckles)—

(1) may, *if he is convicted for the first time* of having so committed a crime of violence in the District of Columbia, be sentenced, in addition to the penalty provided for such crime, to a period of imprisonment which may be up to life imprisonment; and

(2) shall, *if he is convicted more than once* of having so committed a crime of violence in the District of Columbia, be sentenced, in addition to the penalty provided for such crime, to a minimum period of imprisonment of not less than five years and a maximum period of imprisonment which may not be less than three times the minimum sentence imposed and which may be up to life imprisonment.

* * * * *

(d)(1) Chapter 402 of title 18 of the United States Code (Federal Youth Corrections Act) shall not apply with respect to any person sentenced under paragraph (2) of subsection (a).

(2) The execution or imposition of any term of imprisonment imposed under paragraph (2) of subsection (a) may not be suspended and probation may not be granted. (Emphasis added).

Before the amendment, 22 D.C.Code § 3202 (Supp. I, 1968) provided as follows:

If any person shall commit a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm, or other dangerous or deadly weapon, including but not limited to, sawed-off shotgun, shotgun, machinegun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, metallic or other false knuckles, he may in addition to the punishment provided for the crime be punished by imprisonment for an indeterminate number of years up to life as determined by the court. *If a person is convicted more than once* of having committed a crime of violence in the District of Columbia when armed with or having readily available any pistol or firearm, or other dangerous or deadly weapon, including but not limited to, sawed-off shotgun, shotgun, machinegun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, metallic or other false knuckles, then, notwithstanding any other provision or law, the court shall not suspend his sentence or give him a probationary sentence. (Emphasis added).

in 1968, and committed an armed crime of violence under this section after the effective date and was thereafter convicted, he would come within the mandatory minimum second offender provision of this section requiring a minimum sentence of ten years." Report of the Committee on the District of Columbia on H.R. 16196, 91st Cong., 2d Sess., Report No. 91–907, p. 69.

The provisions in the House Bill for mandatory minimum sentences were eliminated in conference, except for "a provision for second-offender armed violent felons." Senate Comm. on the District of Columbia, Statement of the Managers on the Part of the Senate Submitted Regarding the Conference Action Upon S. 2601, The President's Crime Legislation for the District of Columbia, 91st Cong., 2d Sess., (Comm. Print 1970), p. 22. There is nothing in the legislative history however to indicate any disagreement with the interpretation of the phrase "is convicted more than once * * * of a crime of violence" that appeared in the House Report.

An important purpose of Congress in enacting the District of Columbia Court Reform and Criminal Procedure Act of 1970 was to cope with what the Senate Report described as a "crime crisis" or "crime plague" which "grips the Washington area." *Id.*, p. 1. To this end the Congress provided for substantially increased penalties for multiple offenders. In light of this legislative history we think the construction placed upon section 3202(a)(2) by the appellant is inconsistent with the manifest Congressional purpose and must be rejected.

The appellant directs our attention to the provisions of section 201 of the Act, 22 D.C.Code §§ 104 and 104a, which refer to "any person [who] is convicted of a criminal offense * * * and was previously convicted of a criminal offense" and to "any person [who] (A) is convicted in the District of Columbia of a felony, and (B) before the commission of such felony, was convicted of at least two felonies." The appellant argues

that similar language would have been used in section 205, 22 D.C.Code § 3202 if Congress had intended that section to apply to convictions occurring before its effective date.

We note, however, that section 205 merely clarified the phrase "deadly or dangerous weapon" as used in the existing statute, 22 D.C.Code § 3202 (Supp. I, 1968) and provided a mandatory minimum sentence upon conviction of a second or subsequent armed crime of violence. The existing section 3202 also used the phrase "a person [who] is convicted more than once of having committed a crime of violence in the District of Columbia when armed", and this phrase was not changed by the draftsmen of the amendment. On the other hand, Congress in section 201 completely rewrote 22 D.C.Code § 104 (1967). In these circumstances we think the failure of the draftsmen to revise the phrase "is convicted more than once" in section 3202 has little weight; although it may suggest some inattention to precise symmetry it does not demonstrate a purpose to eliminate consideration of convictions occurring before the Act became effective.

The appellant relies upon section 901 of the Act, Pub.L. No. 91–358 (July 29, 1970), which in clause 3 provides that the amendments to 22 D.C.Code §§ 104 and 3202 "shall apply with respect to any person who commits an offense after the effective date of this Act." Although, as the appellant says, this provision "speaks * * * prospectively" we think it obvious that its only purpose was to guard against any possibility that the sections to which it referred, providing for increased penalties, might be construed as *ex post facto* legislation. The provision should not be taken as prohibiting consideration of the appellant's previous conviction.

■ Finally, the appellant argues that section 3202 is unconstitutional since it denies him the equal protection of the laws. We note that having received treatment under the Youth Act on his first conviction, he now stands on

the same footing as one who committed his first crime of violence while armed after the effective date of the 1970 amendment to section 3202. We find nothing unreasonable in the decision of Congress to withhold the benefits of the Youth Act from those twice convicted of armed crimes of violence. United States v. Fersner, 151 U.S.App.D.C. 20, 465 F. 2d 605 (1972).

█ The appellant was sentenced to concurrent terms of 5 to 15 years on counts 1 and 4 charging armed robbery, and terms of 3 to 10 years on counts 3 and 6, charging assault with a dangerous weapon. Since we have held that assault with a dangerous weapon is included in armed robbery, the sentences on counts 3 and 6 should be vacated. *See* United States v. Johnson, 155 U.S. App.D.C. 28, 475 F.2d 1297 (1973). With this modification the judgment is

Affirmed.

LEVENTHAL, Circuit Judge, dissenting in part:

I join in affirming the conviction, but believe the trial judge erred in concluding that a five-year minimum sentence was mandatory.

The issue concerns the construction of Section 205 of the District of Columbia Court Reform Act, passed July 29, 1970, 22 D.C.Code § 3202(a) (Supp. V, 1972). In subsection (a)(1) Congress provided severe exposure, up to life imprisonment for a person who "commits a crime of violence in the District of Columbia when armed." In subsection (a)(2) Congress provided that any such person "shall, if he is convicted more than once of having so committed a crime of violence in the District of Columbia," be sentenced to a minimum of five years.

In my view the provision in § 205(a)(2) should not be held to require a mandatory minimum five year sentence for a person whose prior crime of violence was committed prior to the passage of this provision. A statute normally is interpreted to operate prospectively. The words "if he is convicted more than once" do not have a retroactive ring.[1]

There is undoubted need for severe sentencing power for persons who commit crimes of violence. Such maximum sentences buttress deterrent policy. But when a legislature is mandating compulsory sentences, it must, in my view, be entirely explicit in the terms of the law. The broad assumptions of legislative intent that are not particularized in detail run the risk of sentences which, by their rigidity, can do more to hurt society than to help it.

The Government admitted that its view of the sound construction of this statute leads to this result: Take a young person who commits one armed crime of violence before the 1970 Act was passed, and another after the Act was passed. He is subsequently tried for the first offense, given Youth Corrections Act disposition, and is set on a sound road during and as a result of the Youth Corrections Act treatment. Nevertheless, he must be given a five-year mandatory minimum for the crime committed prior to the opportunity given him for Youth Correction Act treatment, so that the rehabilitative work which is so necessary to break the vicious cycles of crime and recidivism would be undone.

I do not minimize the deterrent values of sentences. This has particular meaning as to maximum sentence. As to

---

1. They do not have the same retroactive quality as the provisions in § 201 of the 1970 act, which provides for increase in maximum punishment, in these circumstances: Under § 201(a), 22 D.C.Code § 104, "if any person (1) is convicted of a criminal offense . . . and (2) was previously convicted of a criminal offense . . . which offense, at the time of the conviction referred to in paragraph (1) is the same as, constitutes, or necessarily includes, the offense referred to in that paragraph."

Under § 201(b), 22 D.C.Code § 104a, "if any person (A) is convicted in the District of Columbia of a felony, and (B) before the commission of such felony, was convicted of at least two felonies. . . ."

mandatory minimum sentences, deterrence implies notice. Where the first offense was committed prior to enactment of the statute, the deterrent and notice effects of the provision as to the consequence of future misconduct was at best severely attenuated. [2]

The law indulges a presumption that the passage of the Act with this provision gave legal notice to all of all of its provisions. All laws must have such a presumption that is conclusive as a matter of law, for no one can stop the effect of a new law on the ground that he has not heard it. That presumption was applied in the early part of the 19th century even when communications did not permit a resident of Boston to learn for some days of a law that had been passed in Washington. But here we are concerned with criminal statutes, subject to the doctrine of lenity when there is ambiguity. I would vacate the sentence and remand for resentencing.

---

2. The precise point is not before us, but I would be inclined to think that § 205's mandatory minimum only operates when the second offense is committed subsequent to a conviction for the prior offense.