Anthony **CARBONARO** et al.

v.

Kenneth R. **REEHER**, Individually and as Executive Director of the Pennsylvania Higher Education Assistance Agency, et al.

Civ. A. No. 73-511.

United States District Court,
E. D. Pennsylvania.

April 28, 1975.

Stephen F. Gold, Community Legal Services, Inc., David Rudovsky, Philadelphia, Pa., for plaintiffs.

John D. Killian, Thomas W. Scott, Killian & Gephart, Harrisburg, Pa., for defendants.

Before ADAMS, Circuit Judge, LORD, Chief District Judge, and BECHTLE, District Judge.

## OPINION

JOSEPH S. LORD, III, Chief District Judge.

Plaintiffs brought this action seeking a declaratory judgment that sections of Chapter 18 of Title 24, Purdon's Pa. Stat.Ann. and regulations adopted pursuant thereto are unconstitutional and requesting that defendants be enjoined from enforcing those sections and regu-

lations. Plaintiffs, each of whom has been convicted of a felony but had either completed sentence or been released on parole at the time this suit was commenced, represent a class consisting of "all citizens and bona fide residents of the Commonwealth of Pennsylvania who have satisfied or will satisfy the statutory and regulatory eligibility requirement for PHEAA [Pennsylvania Higher Education Assistance Agency] financial assistance and/or for a Veterans' Education Scholarship, but who have been, or will in the future be, denied eligibility or whose eligibility has been withheld due to the fact that they have been convicted of [a] felony and are thus deemed to lack satisfactory character." Since the requirements of 28 U.S.C. §§ 2281 and 2284 were satisfied, a three-judge district court was convened. We have jurisdiction under 28 U.S.C. §§ 1331, 1343(3) and 42 U.S.C. § 1983. Plaintiffs and defendants have both moved for summary judgment. We shall grant defendants' motion.

The Pennsylvania Higher Education Assistance Agency was established to provide financial assistance to students enrolled in postsecondary education programs by guaranteeing loans and scholarships. Plaintiffs attack those portions of Chapter 18 which allow the agency to deny financial aid to any student convicted of a felony.[1] Specifically, they challenge 24 P.S. §§ 5104.1 and 5158.-2(a)(1),[2] 5154(a)(5),[3] and 5171 et seq.[4] The thrust of their complaint is that Pennsylvania, in contravention of the equal protection clause, has discriminated against former felons by treating them differently from non-felons in considering their applications for financial assistance.[5]

## I

To understand this claim better, it is necessary to examine how PHEAA actually operates. Any student seeking financial assistance must, according to PHEAA regulations, "have and maintain satisfactory character. A student

---

1. Although neither party has discussed any issue of standing or mootness, we note that each of the named plaintiffs has received aid for either the academic year 1972–73 or 1973–74. However, none had received aid at the time this suit was instituted and, since there are members of the class still denied aid, there is no mootness problem. See, e. g., Conover v. Montemuro, 477 F.2d 1073 (C.A.3, 1973).

2. These sections provide:

"The agency may deny all forms of financial assistance to any student:

"(1) Who is convicted by any court of record of a criminal offense which was committed after the effective date of this act which, under the laws of the United States or Pennsylvania, would constitute a misdemeanor involving moral turpitude or a felony."

An earlier three-judge court in this district struck down as unconstitutional the language of these sections allowing disqualification for conviction of a misdemeanor involving "moral turpitude." Corporation of Haverford College v. Reeher, 329 F.Supp. 1196 (E.D.Pa. 1971). In the course of its opinion, the court noted that "it is clear that the state could deny eligibility for financial aid to any student convicted of any offense." Id., at

1210. This statement was clearly dictum and is not dispositive of the issue here.

3. This section provides:
"Any student is eligible for consideration for a State scholarship providing:
* * * * *
(5) He shall satisfactorily meet the qualifications of 'financial need,' character and academic promise, as well as academic achievement, as established by the agency."

4. These sections comprise the "Veterans' Education Act of 1971" and vest in PHEAA the discretion to award scholarships to "qualified" veterans.

5. In their complaint, the plaintiffs also allege that the statutes and regulations contravene the due process clause because they are arbitrary and bear no relationship to a rational state purpose, that they offend the Fourteenth Amendment "because they are vague and offer no legislative standards for what is satisfactory 'character'" and that they violate the Eighth Amendment prohibition against cruel and unusual punishment. However, plaintiffs have not pressed these claims in their motion. Since the parties have agreed that we may dispose of this case on the cross-motions for summary judgment, we do so without considering these issues.

applicant or recipient who is convicted of any of the following offenses may be deemed to lack satisfactory character and be denied any or all forms of financial assistance by the Agency:

"(1) A criminal offense which under the laws of the United States or any state constitutes a felony.

"(2) A criminal offense which under the laws of the Commonwealth of Pennsylvania constitutes murder of the first degree, felony of the first degree, felony of the second degree, felony of the third degree, misdemeanor of the first degree, misdemeanor of the second degree, and misdemeanor of the third degree.

"(3) A violation of section 13 of the Controlled Substance, Drug, Device and Cosmetic Act, act of April 14, 1972, No. 64 (35 P.S. § 780–113), except subsection (31) thereof." 22 Pa.Code 121.6.

If an applicant responds on the loan guaranty or grant application form that he has not been convicted of a crime, PHEAA presumes that his character is satisfactory and makes no further inquiry. If, however, the applicant answers that he has been convicted of a crime, the agency sends him a crime inquiry form on which the applicant must list the dates of arrest and conviction, the specific charges of which he was convicted, the penalty imposed, the length of time of incarceration or parole, and the name and address of the court in which he was sentenced. Additionally, any applicant still on parole must attach a letter of reference from the parole officer.

The felon's application is first considered by an agency staff person. If this initial determination is that the applicant is of unsatisfactory character, he is so informed and advised that he may appeal the decision. If he decides to appeal, he must submit additional information concerning the circumstances of his arrest and conviction. The appeal process encompasses several stages. First, the decision is reviewed by the Administrative Review Committee, composed of staff personnel selected by PHEAA's Executive Director. If still aggrieved, the applicant may appeal to the Committee on Appeals, a subcommittee of PHEAA's Board of Directors. Next the student has the right to appeal to the full Board of Directors which appoints a hearing examiner to take testimony and make recommendations to the Board for final decision. If dissatisfied with the agency's final determination, the applicant may appeal to the Commonwealth Court of Pennsylvania. *See* 22 Pa.Code §§ 121.7, 121.8.

## II

Plaintiffs argue that the state's discrimination against felons may not stand because the felon classification bears no substantial, or even rational, relationship to any legitimate state purpose; because the classification is both over- and under-inclusive; and because PHEAA administers the act arbitrarily and capriciously. We shall consider these claims in turn.

### A

■ We begin our analysis by rejecting plaintiffs' attempt to subject the state's system to the "strict scrutiny" standard of review. That standard is applied to state legislation which either infringes a "fundamental" interest or disfavors a "suspect class." *See, e. g.,* San Antonio School District v. Rodriguez, 411 U.S. 1, 16–17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Any claim here that strict scrutiny of the act and regulations is required because they bear on a fundamental constitutional right to a college education must certainly fail in light of Rodriguez. In that case, the Supreme Court, while conceding the central importance of education to our society, *id.* at 29–30, 93 S.Ct. 1278, nevertheless held that primary and secondary education are not fundamental *constitutionally protected* interests. While arguably no less important, certainly postsecondary education may not be deemed an interest entitled to greater recognition.

We note the additional fact that Pennsylvania has in no way disentitled felons from pursuing postsecondary educational opportunities. What the Rodriguez majority observed with regard to Texas' primary and secondary educational system applies with equal force to Pennsylvania's postsecondary education financial assistance program:

"Every step leading to the establishment of the system Texas utilizes today * * * was implemented in an effort to *extend* public education and to improve its quality. Of course, every reform that benefits some more than others may be criticized for what it fails to accomplish. But we think it plain that, in substance, the thrust of the Texas system is affirmative and reformatory and, therefore, should be scrutinized under judicial principles sensitive to the nature of the State's efforts and to the rights reserved to the States under the Constitution." *Id.* at 39, 93 S.Ct. at 1300.

█ Nor can we accept plaintiffs' claim that the act must be subjected to strict scrutiny because the felon classification is suspect. Classifications which have been held suspect include those based on race, national origin, and alienage. Graham v. Richardson, 403 U.S. 365, 372, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). Each involves a condition resulting from the accident of birth over which the disadvantaged individual has no control and which has no relationship to any legitimate state purpose. The felony classification is therefore unlike these other classes and it is not surprising that courts have refused to apply the more stringent standard of review. *See, e. g.,* Upshaw v. McNamara, 435 F.2d 1188 (C.A.1, 1970); Watson v. Cronin, 384 F.Supp. 652 (D.Col.1974); Butts v. Nichols, 381 F.Supp. 573 (S.D.Iowa 1974).

█ Plaintiffs apparently concede that the felon classification as such is not suspect, but argue that it is actually a racial classification entitled to strict scrutiny. In support of this contention, they cite statistics demonstrating that blacks are convicted in significantly greater proportion than whites. We agree with defendants that this situation is not comparable to other racial classifications which directly disadvantage persons on the basis of race. Here the criminal defendant, black or white, has received the full protection of the Constitution before conviction. To hold the felony classification suspect on the basis of race would require us to denounce our entire system of criminal justice. This we will not do.

### B

█ Therefore, we hold that, to withstand review, the state need only demonstrate that the felony classification, under the statute and the agency regulations, bears a rational relationship to a legitimate state purpose. The state cites two bases for its classification. First, it contends that the classification is reasonable because the state has only finite resources and wishes to maximize the potential gain from the available funds by providing assistance only to those students with "satisfactory character." [6] Second, the state argues that, as a political reality, the legislature would not establish any assistance program at all unless it contained the provisions allowing the agency to deny felons aid. We reject this second basis, since political considerations do not constitute a *legitimate* state purpose. If they did, it would be close to impossible to challenge any statute as violative of equal protection since the state could almost always assert that the classification was necessary for passage of the state program.

█ Turning to the other ground, however, we agree that the state has a rational interest in utilizing the felony classification in order to ensure that the

---

**6.** In their brief, defendants actually separate this basis into two distinct grounds: one relating to satisfactory character, the other concerning limited finances. However, we feel that these two grounds are more properly considered as one basis for the classification.

most deserving students receive state aid. The purpose of the assistance program is best stated in 24 P.S. § 5151:

"Although the enrollments of the postsecondary institutions of higher learning of this Commonwealth and throughout the nation continue to increase at a rapid pace, and although larger numbers of the Commonwealth's children graduate from both the public and nonpublic secondary schools each year, there continues to be a tragic underdevelopment of the Commonwealth's human talent because of the inability of many needy students to finance a postsecondary educational program. The Commonwealth of Pennsylvania can achieve its full economic and social potential only if every individual has the opportunity to contribute to the full extent of his capabilities and only when the financial barriers to his economic, social and educational goals are removed. It is therefore the policy of the Legislature and the purpose of this act to establish a broad-scale State scholarship program designed to guarantee that the most able students from all sectors of the Commonwealth, the most needy students and students with the capability to successfully complete postsecondary educational programs, and deserving postsecondary students are given the opportunity to continue their program of self-improvement in an institution of higher learning of their choice."

■ The felony classification was not part of the act when the policy section was enacted in 1963 but was added in 1969. However, we see no inconsistency between the purposes section and those sections allowing PHEAA to deny aid to felons. While the purposes section does state that the potential of "every individual" should be maximized, it also requires that aid be extended only to "deserving" students. The act, as originally enacted, contained § 5154(a)(5) which requires that, to be eligible for assistance, the student must meet the "qualifications of 'financial need,' *character* and academic promise" (emphasis added). These are separate requirements. Read together with the purposes section, it is clear that the act seeks to assure the availability of financial assistance to every needy student of upstanding character. We cannot say that the character requirement is either in conflict with the purpose of the act or an impermissible requirement.

■ The issue thus becomes whether the legislature and the agency have made a reasonable determination in concluding that former felons are of sufficiently questionable "character" to justify placing the burden on the applicant to prove good character. We reject plaintiffs' contention that the felon classification is invalid because it does not relate to such factors as financial need, academic potential, the likelihood of completion of school, or future success. Plaintiffs' argument might have merit if the act did not contain a separate requirement of "character." But we do not agree with the interpretation of "character" implicit in plaintiffs' argument. In establishing character as a separate consideration, the legislature did not intend merely to repeat the financial need and academic promise requirements. It is therefore apparent that an applicant might be well qualified for assistance on the basis of need and promise but still be rejected because not of sufficiently acceptable character. We believe that the legislature used the term "character" in the sense of its dictionary definition:

" * * * a composite of good moral qualities typically of moral excellence and firmness blended with resolution, self-discipline, high ethics, force, and judgment * * *." Webster's Third International Dictionary.

Certainly it cannot be said that the legislature was irrational in concluding that one who has been convicted of a felony and thereby has demonstrated that, at least once in the past, he has lacked "resolution, self-discipline, high ethics,

force, and judgment," is of questionable character. *See* De Veau v. Braisted, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960).

■ Nor are we persuaded by plaintiffs' argument that they must be of satisfactory character because various colleges have admitted them as students. The state is not bound to award financial assistance to a student it views as being of unsatisfactory character merely because a college does not agree with its determination. Again, it must be emphasized that the state is entitled to view "character" in a much broader fashion than plaintiffs have suggested. Thus, the state need not limit itself to the considerations with which a college would be concerned—academic potential, likelihood of completion of the college program, or likelihood of disruption of the campus—or those with which a bank might be concerned in deciding whether to make a loan—risks of fraud or misappropriation of funds. Rather, the state may reasonably conclude that it wishes to assist only the most "deserving," responsible individuals. Having thus concluded, the state is justified in going the next step by requiring former felons to prove their good character.

■ In support of their argument that the state's felony classification is irrational, plaintiffs contend that the classification stands in contradiction to other state programs aimed at the rehabilitation of prisoners. However, this argument would require us to make a judgment as to which programs the state should enact to rehabilitate convicts. Such balancing is not a judicial, but a legislative, function. Furthermore, we see no inconsistency between the felony classification and the state's interest in rehabilitation. The state has merely directed felons to prove their rehabilitation. It has enacted no ban to the admission of felons at any of its own educational institutions. While we do not doubt the substantial contribution a college education can make toward a felon's rehabilitation, we cannot say that the state is constitutionally required to provide that opportunity at its own expense.

Our conclusion is reinforced by some additional considerations. It is undisputed that there are not sufficient funds to provide requested financial assistance to all the deserving non-felon applicants.[7] That the amount of aid sought by former felons is an insubstantial portion of PHEAA's total budget is not relevant. Furthermore, the felon classification is not an outright ban on aid to former felons but merely shifts the burden to felons to prove satisfactory character. Thus, this case is not governed by those which have struck down irrebuttable presumptions as violative of due process. *See, e. g.,* Cleveland Board of Education v. Lafleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). Indeed, many former felons have received PHEAA scholarships and loans after satisfying the agency of their good character. Also, we note that the agency does not base its conclusion of disqualification on the mere fact of a felony conviction alone. Rather, the agency takes many factors into consideration: the seriousness of the crime, the circumstances surrounding the crime, the age of the felon at the time of the crime, the felon's record of other convictions, the sentence, efforts at rehabilitation, and character references.

■ We also reject plaintiffs' contention that the classification is invalid because it is both over- and under-inclusive. The argument of under-inclusiveness is based on the fact that there are non-felons granted aid who nonetheless may not be of satisfactory character. However, we cannot say that the legislature must require the agency to examine the character of all applicants, an undertaking that would involve considerable time, expense, and effort. There is sim-

---

7. For the 1973-74 academic year, funds requested exceeded funds made available by approximately $118.4 million.

ply no merit to the contention, implicit in plaintiffs' argument, that the state may not constitutionally choose to limit its character inquiry to those who have been proven in the past to have committed crimes and who therefore may reasonably be considered of questionable present character.

Plaintiffs argue that the classification is over-inclusive because it penalizes persons convicted of crimes which bear no rational relationship to the denial of financial assistance. Again, plaintiffs have misconstrued the purpose of the character inquiry. It is not designed to test character with regard to need for financial aid but is a separate requirement by which the state seeks to limit its aid to those whom it considers upstanding persons. Requiring all former felons to submit to the character inquiry merely assures that no one who has been shown to have lacked satisfactory character in the past will receive aid without appropriate proof of rehabilitation.

Most of plaintiffs' claims with regard to the allegedly irrational nature of the classification question the wisdom rather than the constitutionality of the state program. Plaintiffs would have us substitute our judgment for that of the legislature. It is beyond dispute that we may not engage in such second-guessing but may only consider challenges of a constitutional dimension. "Misguided laws may nonetheless be constitutional." James v. Strange, 407 U.S. 128, 133, 92 S.Ct. 2027, 2031, 32 L. Ed.2d 600 (1972).

Therefore, we hold that the Pennsylvania statutory and administrative scheme which allows PHEAA to disqualify felons from postsecondary educational assistance unless they satisfy the agency that they are of requisite character bears a rational relationship to a legitimate state purpose and consequently does not offend the equal protection clause of the Fourteenth Amendment.

## III

In addition to challenging the state statute and regulations on their face, plaintiffs attack their constitutionality as applied. They argue that PHEAA administers the aid program arbitrarily and capriciously and that enforcement of the statute and regulations should therefore be enjoined. Plaintiffs cite many instances of alleged arbitrariness in their motion for summary judgment. However, we have examined these examples and agree with defendants that they do not demonstrate capriciousness. It is true that there are several cases in which applicants with similar backgrounds have been treated differently. In most of these instances, however, the different results are attributable to the fact that some applicants failed to appeal from an adverse staff recommendation while others pursued their appellate remedies. Furthermore, even though there may be some isolated examples of inconsistency, we cannot say that overall PHEAA administers its program arbitrarily. Rather, it appears that different treatment arises from the fact that PHEAA considers a variety of factors in addition to the crime committed.

## IV

To reiterate, we hold that the statutory and administrative program whereby Pennsylvania places the burden on former felons to prove that they are of satisfactory character in order to receive state financial assistance for postsecondary education does not violate the equal protection clause of the Fourteenth Amendment. The felon classification bears a rational relationship to the legitimate state purpose of assuring that only responsible citizens receive state aid. In addition, plaintiffs have failed to show abuse in the agency's administration of the state program. Therefore, we shall deny plaintiffs' and grant defendants' motion for summary judgment.