IN RE SCHROEPFER.

(No. 83-013—Decided February 28, 1983.)

Mr. *Thomas P. McCue,* for appellee.

Mr. *Anthony J. Celebrezze, Jr.,* attorney general, and Ms. *Barbara A. Serve,* for appellant.

BAYNES, J. This is a decision of an appeal brought before the Court of Claims from the Victims of Crime Compensation Program. A single commissioner of the victims-of-crime program granted the applicant-appellee, John Schroepfer, an award of economic loss by way of work loss, but denied an award for economic loss by way of allowable expense based upon the collateral-source rule in the Victims of Crime Act. Following an objection filed by the applicant-appellee, a panel of three commissioners reversed the single commissioner's denial of an award for allowable expense and ordered that an award of $15,825.57 be made to the applicant-appellee. The Attorney General of Ohio, on behalf of the state of Ohio, Victims of Crime Reparations Special Account (hereafter referred to as "Reparations Fund"), filed an appeal of the three-commissioner panel's allowable-expense award determination. The Attorney General argues that the three-commissioner panel erred in ordering an award for allowable expense which was contrary to law. R.C. 2743.53(A) states that the Court of Claims "[s]hall hear and determine all matters relating to appeals from decisions of the court of claims [victims-of-crime program] commissioners."

I

The facts of the incident which prompted the filing of this claim with the victims-of-crime program are not in dispute. According to the findings of fact contained in the single commissioner's determination, on September 17, 1978, at about 1:30 a.m., the applicant-appellee and two companions left a bar in Dayton, Ohio. While the three men were walking down a street, they exchanged words with the offender. The applicant-appellee's two companions moved on, but the applicant-appellee did not, and he was assaulted. On September 17, 1978, the applicant-appellee was eighteen years old, a student at the University of Dayton, and a resident of New Jersey whose family was receiving public welfare. He filed an application for an award with the victims-of-crime program on February 27, 1979. In

the application, the applicant-appellee indicates that medical benefits were available to him from medicaid, and that no other sources of medical or loss-of-income benefits were available.

The single commissioner's findings of fact and conclusions of law state that the applicant-appellee incurred economic loss by way of allowable expense, but that all of the economic loss was reimbursed or reimbursable by collateral sources, which required denial of an award. The single commissioner applied the rule set forth in *In re Winborn* (Oct. 19, 1981), No. V80-40021sc, unreported, a previous single-commissioner decision which states:

"When an Applicant fails to file a claim for an allowable expense with a collateral source which would provide reimbursement for such expense, that expense will be deemed to have been recouped from a readily available source."

The three-commissioner panel's findings of fact in the instant claim state:

"1) The Applicant failed to submit a portion of his allowable expense (amounting to $15,825.57) to the New Jersey Medicaid administration for recoupment within the time limitations established by that administration.

"2) The Applicant can no longer recover any of his allowable expense from the New Jersey Medicaid program.

"3) The .Applicant has sustained economic loss by way of allowable expense which has not been reimbursed and is not reimbursable from a readily available source in the amount of $15,825.57."

## II

Provisions regarding the collateral-source rule in the Victims of Crime Act are contained in R.C. 2743.51(B), 2743.60(D), 2743.56(B)(1), 2743.59(C)(5), 2743.68 and 2743.72. R.C. 2743.51(B) states:

" 'Collateral source' means a source of benefits or advantages for economic loss otherwise reparable that the victim or claimant has received, or that is *readily available* to him from any of the following sources:

"(1) The offender;

"(2) The government of the United States or any of its agencies, a state or any of its political subdivisions, or an instrumentality of two or more states, unless the law providing for the benefits or advantages makes them excess or secondary to the benefits under sections 2743.51 to 2743.72 of the Revised Code;

"(3) Social security, medicare, and *medicaid*;

"(4) State-required, temporary, non-occupational disability insurance;

"(5) Workmen's compensation;

"(6) Wage continuation programs of any employer;

"(7) Proceeds of a contract of insurance payable to the victim for loss that he sustained because of the criminally injurious conduct;

"(8) A contract providing prepaid hospital and other health care services, or benefits for disability." (Emphasis added.)

R.C. 2743.60(D) states in pertinent part:

"A single commissioner or a panel of commissioners shall reduce an award of reparations or deny a claim for an award of reparations that is otherwise payable to a claimant to the extent that the economic loss upon which the claim is based is *recouped from other persons, including collateral sources* * * *. If an award is reduced or a claim is denied because of the expected recoupment of all or part of the economic loss of the claimant from a collateral source, the amount of the award or the denial of the claim shall be conditioned upon the claimant's economic loss being ' recouped by the collateral source. If the award or denial is conditioned upon the recoupment of the claimant's economic loss from a collateral source and it is determined that the claimant will not receive all or part of the expected recoup-

ment, the claim shall be reopened and an award shall be made in an amount equal to the amount of expected recoupment that it is determined the claimant will not receive from the collateral source." (Emphasis added.)

R.C. 2743.56(B)(7) requires an applicant who files for an award of reparations to indicate the amount of benefits that the victim, dependent, or the applicant has received or is entitled to receive from any collateral source for economic loss, which resulted from criminally injurious conduct, and the name of each collateral source. R.C. 2743.59(C)(5) requires the Attorney General to list in his findings and recommendation any benefits or advantages that the victim, applicant, or a dependent has received or is entitled to receive from any collateral source for economic loss that resulted from the criminally injurious conduct. The references to collateral sources contained in R.C. 2743.68, which relates to dormant claims, and R.C. 2743.72, which relates to the state's subrogation to an applicant's rights, are not material to the statutory-interpretation question presented by this appeal.

It is a basic rule that sections of law which relate to the same matter, subject, or object are *in pari materia,* and should be construed together, especially when the subject of a case explicitly calls for application ·of both sections. See 50 Ohio Jurisprudence 2d 189, Statutes, Section 216; 73 American Jurisprudence 2d 386, Statutes, Section 187. 50 Ohio Jurisprudence 2d 192-193, Statutes, Section 218, states:

"Statutes or sections of statutes. which expressly refer to each other or by· implication relate to each other, or which relate to the same person or thing or to the same class of persons or things or to the same subject or object, may be regarded as in pari materia, as may statutes which relate to similar things, subjects, or objects."

The cases cited for these propositions are legion and require no enumeration. Further, R.C. 1.47 provides:

"In enacting a statute, it is presumed that:

"* * *

"(B) The entire statute is intended to be effective;

"* * *

"(D) A result feasible of execution is intended."

Applications for awards of reparations arise by virtue of special legislation, and special legislation must be construed as *in pari materia.* For example, partition legislation was construed as *in pari materia* in *Malone* v. *Malone* (1963), 119 Ohio App. 503, 506 [28 O.O.2d 127]. In *In re Taylor* (April 2, 1982), No. V80-47386, jud, Jud. Dec. No. 82-019, unreported, and in other claims, this court held:

"The Victims Act created a right, under specified conditions, for a claimant to participate in a reparations fund. It is a special statutory proceeding. The right to participate is controlled by compliance with special criteria and restrictions contained in the Act, one of which is the application must be filed within one year. (Unpublished opinion in *In Re: Paige,* V80-036325sc [11-25-80], affirmed jud [10-21-81] in Judicial Decision No. 81-033.)

"The Victims Act did not create a Death Benefit, a form of Health and Accident Insurance or a Welfare Fund. It provides a vehicle for certain persons, in a restricted way, to participate in a legislatively created class gift. It is not to be construed broadly or subject to remedial interpretation. It requires a construction reasonably limited to the terms used. (Unpublished opinion, in *In re: Cornell,* V79-0379sc [10-30-80], affirmed jud [10-23-81], in Judicial Decision No. 81-035.)"

The three-commissioner panel construed R.C. 2743.51(B) to mean that only those benefits actually received by the applicant constitute collateral sources. The panel stated that to construe the section otherwise would be an exercise in judicial

legislation and in effect create a "penalty" which was not intended by the General Assembly in the Victims of Crime Act. We find the use of the word "penalty" with reference to the Victims of Crime Act to be incongruous. The Act in no way imposes a "pecuniary punishment" on an applicant or anyone else. See the definition of "penalty" in Black's Law Dictionary (5 Ed. 1979) 1010.

Apparently, in its construction, the three-commissioner panel placed emphasis on the phrase "is recouped from other persons, including collateral sources" from R.C. 2743.60(D) without regard to the language in R.C. 2743.51(B)(1) which refers to whether or not the collateral-source benefit was "readily available" to the applicant-appellee. The failure of the panel to construe these sections as *in pari materia* caused them to misconstrue the intent of the General Assembly. This error was made irrespective of the three-commissioner panel's findings of fact which state that the applicant-appellee "failed to submit a portion of his allowable expense (amounting to $15,825.57) to the New Jersey Medicaid administration for recoupment within the time limitations established by that administration," and that he "can no longer recover any of his allowable expense from the New Jersey Medicaid program." The fact is also of record that the New Jersey medicaid program did pay $3,801.62 for medical service which the applicant-appellee applied for within the applicable time limitations. This fact indicates that the availability of the medicaid benefits was known to the applicant-appellee.

The Victims of Crime Act imposes a duty upon a victim-applicant which reasonably requires that he recover benefits from collateral sources "readily available to him."

A requirement similar to the "readily available" language in R.C. 2743.51(B) is contained in R.C. 2743.51(G), which concerns economic loss by way of work loss. R.C. 2743.51(G) states in pertinent part:

" 'Work loss' means loss of income from work that the injured person would have performed if he had not been injured and expenses reasonably incurred by him to obtain services in lieu of those he would have performed for income, reduced by any income from substitute work actually performed by him, or by income he would have earned in *available* appropriate substitute work that he was capable of performing *but unreasonably failed to undertake.*" (Emphasis added.)

Thus, the section imposes a duty on an injured applicant, such as the applicant-appellee in this claim, that he reduce any work loss by performing "available" work which he could "reasonably" undertake.

A victim-applicant's failure to perform his duty to recover benefits from collateral sources "readily available to him" is analogous to a failure to mitigate damages or situations requiring the application of the doctrine of avoidable consequences. These rules are not of recent origin. One who through negligence or willfulness allows damage to be unnecessarily enhanced causes the increased loss to fall upon himself. See 30 Ohio Jurisprudence 3d 27-28, Damages, Section 16; 22 American Jurisprudence 2d 50-52, Damages, Section 30; and Restatement of Torts 2d (1979), Section 918, and 1982 Appendix to Section 918.

R.C. 2743.56(B)(7) provides:

"[A claimant is required to provide information on:] the amount of benefits or advantages that the victim, a dependent, or the claimant has received or is *entitled to receive from any collateral source* for economic loss that resulted from the criminally injurious conduct and the name of each collateral source." (Emphasis added.)

As stated above, R.C. 2743.59(C)(5) requires the Attorney General to list in his findings and recommendation any

benefits or advantages that the victim, applicant, or a dependent has received or is *entitled to receive from any collateral source* for economic loss that resulted from the criminally injurious conduct.

The reasoning behind legislation providing reparations for victims of crime is a topic of discussion in: Comment, Reparation Awards to Victims of Crimes in Ohio (1979), 13 Akron L. Rev. 97; and Rothstein, How the Uniform Crime Victims Reparations Act Works (1974), 60 A.B.A.J. 1531, which was cited in *In re Moss* (Apr. 9, 1982), No. V80-43909 jud, Jud. Dec. No. 82-021, unreported. According to the Comment in the Akron Law Journal, the reasoning behind the Ohio Victims of Crime Act was that traditional tort-recovery, insurance, and restitution remedies were inadequate for victims of crime and that some kind of state-funded program was required. This conclusion reveals that awards from the Victims of Crime Reparations Fund are supplementary or secondary to all other sources of benefits from governmental, quasi-governmental, or private sources. We note that R.C. 2743.60(D) provides that if an award, denial, or reduction is conditioned upon the recoupment of an applicant's economic loss from a collateral source, and it is determined that the applicant will not receive all or part of the expected recoupment, the claim shall be reopened and an award shall be made in an amount equal to the amount of expected recoupment that it is determined the applicant will not receive from the collateral source.

On October 19, 1982, when the three-commissioner panel's order in this claim was filed, Am. Sub. S.B. No. 30 was pending before the 114th General Assembly. This legislation, which contains amendments to the Victims of Crime Act, was passed on November 18, 1982, and will become effective on March 18, 1983. Despite the changes provided for in Am. Sub. S.B. No. 30, the words "readily available" remain unchanged in R.C. 2743.51(B). The Attorney General's appellate brief points out that amendments to R.C. 2743.60(D) and 2743.59(C)(5) contain clarifying language regarding the availability of payment of collateral-source funds. The Attorney General argues that the legislature intended that if collateral-source benefits are available, an applicant must avail himself of them as a condition precedent to an award of reparations. The applicant-appellee argues that the intention of the General Assembly heretofore did not require setting off a collateral source as readily available until benefits were paid to an applicant. It is purely speculation to argue the intent of the General Assembly in the Victims of Crime Act by comparing the present R.C. Chapter 2743 with the amendments made in Am. Sub. S.B. No. 30. However, in our view, it is plausible that the intent of the General Assembly in amending R.C. 2743.60(D) through the provisions of Am. Sub. S.B. No. 30 was to clarify that section to preclude the interpretation of that section manifested in the three-commissioner panel decision in this claim.

The record of this claim indicates that the only reason the applicant-appellee was prevented from having most, if not all, of his allowable medical expenses paid by the New Jersey medicaid program was his failure to apply for medicaid benefits within the applicable time limit. We note that the three-commissioner panel found likewise. It is not for an applicant to decide for himself whether or not he is going to file a claim with the Victims of Crime Reparations Fund or with a medicaid program to pay for medical expenses. The Victims of Crime Act explicitly states that medicaid is a collateral source. It was the applicant-appellee's duty to recover from that collateral source, and he has no right to an award of reparations to the extent of his failure to secure those benefits. He could file for medicaid benefits or not file for such benefits at his election, but his

failure to file should not be at the expense of the Reparations Fund.

The fact that the applicant-appellee was not a resident of this state has no bearing on this decision. To this court's knowledge, the same rule would and has heretofore been uniformly applied with regard to an Ohio resident injured by an Ohio criminal or a non-resident criminal in transit from another state.

### III

From the record of this claim, it is clear that the applicant-appellee failed to file a claim for medicaid benefits to recoup allowable expense when he had knowledge of the availability of such benefits. The Victims of Crime Act is a special statutory proceeding which requires that all provisions of the act be construed as *in pari materia.* In construing R.C. 2743.60(D) and 2743.51(B) as *in pari materia,* the phrase "is recouped from other persons, including collateral sources" (R.C. 2743.60[D]) includes those benefits which are "readily available" (R.C. 2743.51[B]) and which the applicant-appellee failed and neglected to apply for.

Further, the failure of the applicant-appellee to perform his duty to apply for medicaid benefits, a specific collateral source explicitly included in the definition of collateral source in the Victims of Crime Act, should not impose a liability on the Reparations Fund contemplated by the Act. The denial to the applicant-appellee of an award of economic loss by way of allowable expense does not constitute a penalty upon him. Awards made under the Victims of Crime Act are a supplementary or secondary source of funds to all other primarily available benefits which reduce the economic loss of a member of the public who suffers from criminally injurious conduct and who is without proximate fault.

Although he did not file an appellate brief, the attorney for the applicant-appellee did appear and orally argue the claim. In accordance with R.C. 2743.65(A), he is entitled to an attorney-fee award to the extent of the service rendered.

We conclude that the Attorney General's assignment of error, which states that the three-commissioner panel's order was contrary to law, is well taken and sustained. The order of the panel of commissioners, granting an award of reparations to the applicant-appellee, is reversed. It is so ordered.

*Order reversed.*