In re Cowan.

(No. V83-63315—Decided January 30, 1986.)

Court of Claims of Ohio.

*Joel Clayman,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *John T. Williams,* for appellant.

WILLIAM F. BROWN, J. This cause came on for hearing on an appeal from the opinion and order of the single commissioner as affirmed by the Court of Claims panel of three commissioners, which order in substance declared unconstitutional R.C. 2743.60(E) of the Victims of Crime Act.

On May 27, 1982, applicant Rodney Cowan, the victim and appellee herein, was convicted on a charge of forgery, a felony of the fourth degree. On September 20, 1983, appellee Cowan was shot during an altercation in Columbus, Ohio, in consequence of which he incurred medical expenses. On October 21, 1983, the appellee filed a reparations application.

On December 22, 1983, the Attorney General filed his finding of fact and recommendation in which he recommended a denial of the award pursuant to R.C. 2743.60(E) because the applicant had been convicted of a felony within the ten years prior to the criminally injurious conduct.

On November 13, 1984, the single commissioner rendered an opinion in which he concluded that R.C. 2743.60(E), insofar as it barred an award of reparations to any person convicted of a felony within the ten years prior to the incident, violated the Equal Protection Clauses of the Ohio and United States Constitutions.

On the Attorney General's appeal, the panel of commissioners upheld the decision of the single commissioner, holding that R.C. 2743.60(E) constituted a violation of the Equal Protection Clause and a bill of attainder.

The Attorney General filed a timely notice of appeal, and the question of the constitutionality of R.C. 2743.60(E) is now before the Court of Claims.

R.C. 2743.60(E) states in part:

"Neither a single commissioner nor a panel of commissioners shall make an award to a claimant who is a victim, or who claims an award of reparations

through a victim, who, within ten years prior to the criminally injurious conduct that gave rise to the claim, was convicted of a felony * * *."

In the instant case, the appellee, Rodney Cowan, was convicted of forgery, a felony of the fourth degree, on May 27, 1982. The evidence in the record indicates the appellee was a victim of an assault on September 20, 1983, which is the criminally injurious incident upon which the claim is based, and which occurred nearly six months after the effective date of the exclusionary provision. The felony conviction of May 27, 1982 is within the ten-year time restriction imposed by R.C. 2743.60(E). Thus, the above-quoted provision is applicable to the instant case.

\* \* \*

## I

In determining whether the felony exclusion of R.C. 2743.60(E) creates a classification which violates the equal protection guarantees of the Ohio and federal Constitutions, the panel of commissioners looked at the "two-tiered" test of the Ohio Supreme Court as stated in *Bd. of Edn.* v. *Walter* (1979), 58 Ohio St. 2d 368 [12 O.O.3d 327], and found the "strict scrutiny" test cannot be invoked since there was no showing of a suspect classification or fundamental right for equal protection purposes. The panel therefore found that the less stringent "rational basis" test was the appropriate measure to be applied. The court is in accord with the panel's and the single commissioner's choice of tests herein.

The application of the rational basis test requires an examination of the statute at issue to ascertain whether the classification of persons either excluded or included within its boundaries is rationally related to the furtherance of a legitimate state purpose or any combination of legitimate state purposes.

The Ohio Victims of Crime Act is a comprehensive, coherent and consistent statutory program designed to provide compensation to law-abiding victims of crime in Ohio:

"* * * It provides a vehicle for certain persons, in a restricted way, to participate in a legislatively created class gift.

"Accordingly, the philosophical approach to the decisions of this court [the Court of Claims] uniformly has been that it is 'innocent victims' of criminal conduct or those claiming through an 'innocent victim,' who are *prima facie* entitled to an award under the Ohio Act. By 'innocent victim' is meant, with respect to the criminal[ly] injurious injury, a person without proximate fault. It is proper to observe that the 'innocent victim' concept constitutes the soul of the statute and the solid basis on which it is anchored. See *In re Moss* (June 4, 1981), Ct. of Claims No. 82-021, unreported, and *In re Bertram* (April 23, 1982), Ct. of Claims No. 82-023, unreported * * *." *In re DeCerbo* (1982), 5 Ohio Misc. 2d 11, 13.

The Act clearly designates its class of beneficiaries as law-abiding victims, or their dependents, by restricting the participation in the compensation program by persons who are guilty of contributory misconduct or of being accomplices of the criminal offender, or who are serving a sentence of imprisonment in a detention facility, or who have records of felony convictions within ten years prior to the occurrence of the incident forming the basis of their crime victim's claim.[1] The participants in the compensation program are encouraged to cooperate fully with appropriate law enforcement agencies and to report the crime within seventy-two hours of its occurrence.[2]

The application of the rational basis test to the challenged felony exclusion of

---

[1] See R.C. 2743.60(F), (B), (G) and (E).

[2] See R.C. 2743.60(C) and (A).

R.C. 2743.60(E) must include a determination that the exclusion is rationally related to the purpose of the entire Victims of Crime Act. Under *In re Schroepfer* (1983), 4 Ohio Misc. 2d 15, subsections of the Act must be read and construed *in pari materia*. Therefore, a primary purpose of the challenged felony exclusion provision of R.C. 2743.60(E) must be to ensure that only law-abiding victims of crime, or their dependents, may be reimbursed from the reparations fund for any economic loss sustained as a result of that crime.

It should be noted that recent equal protection cases decided by the United States Supreme Court have placed upon those raising equal protection challenges a heavy burden of demonstrating unconstitutionality. Indeed, the Supreme Court has constructed a presumption of constitutional validity of state enactments which a plaintiff must overcome. As stated in *Parham v. Hughes* (1979), 441 U.S. 347, 351-352:

"State laws are generally entitled to a presumption of validity against attack under the Equal Protection Clause. *Lockport v. Citizens for Community Action*, 430 U.S. 259, 272. Legislatures have wide discretion in passing laws that have the inevitable effect of treating some people differently from others, and legislative classifications are valid unless they bear no rational relationship to a permissible state objective. * * *

"* * * The threshold question, therefore, is whether the Georgia statute is invidiously discriminatory. If it is not, it is entitled to a presumption of validity and will be upheld 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.' " (Citations deleted.)

Accordingly, a state bears no burden to defend a classification unless the plaintiff has made a prima facie showing of invidious discrimination. Thus, to overcome the presumption of validity of R.C. 2743.60(E) and demonstrate a violation of the Equal Protection Clause, there must be a showing that the classification bears no rational relation to the goal of ensuring the reparations fund is used to help law-abiding citizens who are innocent victims of crime.

The United States Supreme Court has held that a court has only a limited scope of inquiry, which is well illustrated in a passage appearing in *Minnesota v. Clover Leaf Creamery Co.* (1981), 449 U.S. 456, 464:

"But States are not required to convince the courts of the correctness of their legislative judgments. Rather, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based *could not reasonably be conceived to be true by the governmental decisionmaker.' Vance v. Bradley,* 440 U.S. at 111. * * *

"Although parties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational, *United States v. Carolene Products Co.,* 304 U.S. 144, 153-154 (1938), they cannot prevail so long as *'it is evident from all the considerations presented to [the legislature], and those of which we may take judicial notice, that the question is at least debatable.' Id.,* at 154. Where there was evidence before the legislature *reasonably supporting the classification,* litigants may not procure invalidation of the legislation merely by tendering evidence in court *that the legislature was mistaken."* (Emphasis added; footnote and citations deleted.)

It is apparent from these cases that legislation offends the Equal Protection Clause only if no debatable rationale exists upon which the legislators could have relied in adopting the challenged classification. Such is a narrow inquiry

— a search for clear and purposeful, or wholly irrational, discrimination.

Moreover, a classification will not fail to pass constitutional muster merely because it contains some imperfections which result in mistreatment of some individuals within a larger class. Rather, the rational basis inquiry addresses only the general thrust of the classification, not its marginal application to small subparts of the class.

The Equal Protection Clause's toleration of imperfect classifications is well established. In *Schweiker* v. *Wilson* (1981), 450 U.S. 221, the United States Supreme Court stated, at 234:

"Thus, the pertinent inquiry is whether the classification employed * * * advances legitimate legislative goals in a rational fashion. The Court has said that, although this rational-basis standard is 'not a toothless one,' *Mathews* v. *Lucas*, 427 U.S. 495, 510 (1976), it does not allow us to substitute our personal notions of good public policy for those of Congress:

" 'In the area of economics and social welfare, a State does not violate the Equal Protection Clause [and correspondingly the Federal Government does not violate the equal protection component of the Fifth Amendment] merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequity." *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U.S. 61, 78. *Dandridge* v. *Williams*, 297 U.S. at 485.' "

The proper equal protection inquiry, therefore, is not whether the claimant as an individual litigant has been fairly treated by the challenged classification, but whether the class of which the claimant is a part has been rationally distinguished from another class which is treated differently.

In *Bd. of Edn.* v. *Walter, supra,* at 376, the Ohio Supreme Court held that, in the application of the rational basis test to a statute challenged on equal protection grounds, "* * * every statute is presumed constitutional and can be declared invalid only when its unconstitutionality is shown beyond a reasonable doubt." The *Walter* application indicates the extreme difficulty of overturning a statute using the rational basis test. Its findings are in accord with various recent United States Supreme Court decisions such as the 1981 decisions of *Minnesota* v. *Clover Leaf Creamery Co.* and *Schweiker* v. *Wilson, supra.*

The commissioner, in interpreting legislative history and the circumstances of the origin of R.C. 2743.60(E), determined that the aim of the felony exclusion provision was to exclude the organized crime figure from participating in the crime victims' compensation program. This, he asserted, was not compatible with the rational basis test, and he concluded that the felony exclusion provision was unconstitutional. However, in the same paragraph he stated that the original proposals, submitted in response to the public outcry at the grant of a $50,000 award to the surviving spouse of an organized crime figure in 1979, did not include the proposal for a felony exclusion amendment to the Act among the various legislative proposals made at that time. In view of that legislative history, and in view of the fact the exclusion found in R.C. 2743.60(E) obviously reaches much further than just to organized crime figures, the single commissioner's findings concerning legislative intent are erroneous and ignore the clear working of the statute.

The panel of commissioners adopted the stance of the single commissioner. They indicated their awareness of several reasons put forth by the Attorney General as rational bases for the

enactment of the felony exclusion: a felon should not take advantage of the system he abused, and the felon should not be allowed to deplete the reparations fund. They also noted that the state has a legitimate purpose in protecting truly innocent victims and in maintaining the financial soundness of the reparations fund. However, the panel refused to recognize the latter purposes as valid rational bases for the classification set up by the felony exclusion. Their grounds for such refusal were that there are other statutory provisions contained in the Victims of Crime Act which, presumably, were more "rational" means of achieving the state's purposes of protecting the stability of the fund to ensure only truly innocent, law-abiding victims were recipients thereof.

The analysis of the panel of commissioners disregards the basic rule of reading all sections of the statute *in pari materia. In re Schroepfer, supra.* Since the entire Act has been brought into being to aid law-abiding, innocent victims of crime by furnishing reimbursement for economic loss sustained by such victims or their dependents, it is quite clear the Act as a whole is a means created by the Ohio Legislature in furtherance of protecting such persons.

The legislature has used many tools to ensure the class of persons receiving reimbursement is restricted to innocent, law-abiding victims and their dependents.[3] It is beyond the authority of the panel to delete one of the means which was adopted by the legislature in furtherance of its legitimate purpose only because the legislature had also included other means to restrict the beneficiaries of the Act to a certain class. As discussed above, the Supreme Court of the United States has refused to overturn legislation on equal protection grounds if there was a showing of a rational basis

---

[3] See, *e.g.,* R.C. 2743.60(E), (C), (F), and (H).

for a legislature's choice of the means used to promote a legitimate state interest. The Supreme Court has also upheld imperfect classifications if the classification scheme chosen by the legislature rationally advanced a reasonable and identifiable governmental objective. Yet the panel ignored a "rational basis" and overturned a section of a statute in complete contravention of the analytical tenets provided by the United States Supreme Court and the Ohio Supreme Court.

The specific choice of the words "felony" and "conviction," used to define the limits of the restriction imposed by R.C. 2743.60(E), points to a legislative purpose of preventing convicted felons, *i.e.,* persons found guilty of committing serious crimes, from receiving monetary gain from a fund specially designed to help innocent, law-abiding victims of crime. That such a view is rational and legitimate is apparent from the wealth of various prohibitions imposed on felons (carrying firearms, holding public office, voting, sitting on juries, etc.) that have weathered constitutional attack. The same view makes the felony exclusion a rational and consistent part of our state's victims' compensation program.

Classifications have been upheld where statutes go beyond the realm of "protection of the public" to the realm of social and economic concerns. Two such cases follow the 1970 ruling of the United States Supreme Court in *Dandridge* v. *Williams* (1970), 397 U.S. 471, that in the area of economic and social welfare, a classification which is imperfect but bears some reasonable relation to the legitimate purpose of the statute will not be overturned on equal protection grounds.

In *Marshall* v. *Parker* (C.A. 9, 1972), 470 F.2d 34, a panel of federal judges examined the equal protection challenge to a statute which denied a class of offenders who had been con-

victed of felonies on two or more prior occasions the right to participate in a drug rehabilitation program. The court refused to overturn the statute because the legislature had not denied the felons a fundamental right, and went on to state:

" '* * * A legislature may address a problem "one step at a time," or even "select one phase of one field and apply a remedy there, neglecting the others." * * * So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straightjacket.' " *Id.* at 39, quoting *Jefferson* v. *Hackney* (1972), 406 U.S. 535, at 546.

The court in *Marshall* approved the restriction because:

"* * * Standards of eligibility may well have been developed by the experts in the field with an eye toward restricting eligibility in the beginning to those most likely to be rehabilitated and who would appear to bring to the program the greatest promise for its success, consistent with time, money, trained personnel and facilities which the Congress believed were available for it. For these reasons (or others) the Congress might well have established a policy to exclude, at least at the start, those whose known criminal careers made them undue risks for rehabilitation, and undue risks to the success of the program and to others in it." *Id.* at 38-39.

In *Carbonaro* v. *Reeher* (E.D. Pa. 1975), 392 F.Supp. 753, a panel of federal judges also upheld the constitutionality of a statute which prevented felons from participating in a program of state financial assistance for post-secondary education. In *Carbonaro,* the statute under examination, again, did not take away a fundamental right and was, therefore, measured by the rational basis test. The stated purpose of the statute was to grant financial aid to the most needy students capable of success-fully completing post-secondary education programs. The original Act required a person wishing to participate in the program to meet the qualifications of "financial need," "character" and "academic promise." The Act was later amended, much like the 1983 amendment to the Ohio Victims of Crime Act, to include a provision that excluded felons except on proof of satisfactory character.

The court stated that:

"* * * [W]e see no inconsistency between the purposes section [of the Act] and those sections allowing PHEAA [the Pennsylvania Higher Education Assistance Agency] to deny aid to felons. * * *" *Id.* at 758.

Thus, in *Carbonaro,* a program of granting economic aid to needy individuals meeting qualifications analogous to the Ohio Victims of Crime Program was found to withstand an equal protection challenge using the rational basis test.

The equal protection challenge to the felony exclusion provision of R.C. 2743.60(E) should be measured with the same rational basis analysis as the *Carbonaro* financial aid program's felony exclusion. The intent in both is the same: the state wishes to aid deserving law-abiding persons.

The panel of commissioners in the instant case expressed the view, with which this court disagrees, that the class presented by R.C. 2743.60(E) has "no rational connection with any purpose that the statute could be expected to serve." The panel's decision overlooks the primary basis of the legislature's attempt to provide funds to law-abiding victims of crime, as well as the fact that the felony exclusion provision is but a part of a consistent statutory plan, the purpose of which is to promote cooperation with law-enforcement agencies and aid innocent victims of crime.

The favorable treatment of felons with expunged records is, likewise, well

within the reasonable statutory scheme set up by the Act. Like the economic aid program in *Carbonaro,* felons generally have been excluded from participating in a benefit program set up by the state legislature. The fact that some felons can participate as a result of the expungement of their felony records under the provisions of R.C. 2953.32(A) and (C) is not inconsistent with the purpose of the Act. When the felon seeks to expunge his felony record, he must wait three years after his final discharge before going to the court to show that he is a first offender, "that his rehabilitation has been attained to the satisfaction of the court, and that the sealing of the record of his conviction is consistent with the public interest * * *." R.C. 2953.32(C). It is not unreasonable to provide benefits under the Act to a person with one felony conviction who has had all of his rights and privileges restored pursuant to R.C. 2953.32 and 2953.33. Therefore, contrary to the conclusions of the panel of commissioners, the ability of felons whose records have been expunged to participate in the reparations program is consistent with the program's focus on the law-abiding citizen. It is also consistent with the legislative intent behind the expungement statutes.

The felony exclusion contained in R.C. 2743.60(E) does not violate the equal protection guarantees of the United States and Ohio Constitutions under the facts of this case.

## II

The panel of commissioners determined that R.C. 2743.60(E) is a bill of attainder and therefore unconstitutional as being in violation of Clause One, Section 10, Article I of the United States Constitution.

A bill of attainder was defined in *Nixon* v. *Admr. of General Services* (1977), 433 U.S. 425, 468, as " a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial."

As the *Nixon* case indicates, extrajudicial punishment imposed *on the basis of a status not judicially determined* is the prerequisite of a bill of attainder. As an initial point, of course, it should be noted that a person can acquire the status of a felon only as a direct result of a judicial criminal proceeding. This alone eliminates one of the three critical elements under the *Nixon* formulation.

Furthermore, R.C. 2743.60(E) is not a punishment even though it disqualifies a claimant because of his felony record. In determining whether legislation which bases a disqualification on the happening of a certain past event imposes a punishment, the Supreme Court has sought to discern the objects on which the enactment in question was focused:

"Where the source of legislative concern can be thought to be the activity or status from which the individual is barred, the disqualification is not punishment even though it may bear harshly upon one affected." *Flemming* v. *Nestor* (1960), 363 U.S. 603, 614.

"* * * The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation * * *." *De Veau* v. *Braisted* (1960), 363 U.S. 144, 160.

"Punishment" has been defined as:

"Any fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for some crime or offense committed by him, or for his omission of a duty enjoined by law. A deprivation of property or some right. But does not include a civil penalty redounding to the benefit of an individual,

such as a forfeiture of interest. * * *" Black's Law Dictionary (5 Ed. 1979) 1110.

Clearly, the felony exclusion is not a fine, penalty, or confinement, and is not a civil penalty. Thus, R.C. 2743.60(E) could be considered a punishment only if it were a "deprivation of property or some right." There is no constitutional right to a reparations award, nor is there a common-law right. Moreover, as discussed above, no "right" ever could have accrued in the appellee's case, since the felony exclusion was already in effect six months before he was affected by the exclusion.

The Court of Claims has consistently held that the Victims of Crime Act is a legislatively created class gift and the provisions thereof must be limited to the terms used therein. The Court of Claims stated in *In re Schroepfer, supra*, at 18:

"* * * We find the use of the word 'penalty' with reference to the Victims of Crime Act to be incongruous. The Act in no way imposes a 'pecuniary punishment' on an applicant or anyone else. * * *"

One court has stated in reference to an alleged right to an award of unemployment compensation:

"A right cannot be regarded as vested, in the constitutional sense, unless it amounts to something more than a mere expectation of future benefit or interest founded upon an anticipated continuance of the existing general laws." *Moore* v. *Bur. of Unemp. Comp.* (1943), 73 Ohio App. 362, 365 [29 O.O. 75], quoting 11 American Jurisprudence (1937) 1199, Constitutional Law, Section 370.

Similarly, the United States Supreme Court has held that Social Security benefits cannot be considered an accrued property right. *Flemming* v. *Nestor, supra*. Thus, the claimant has not been deprived of a "right" without the protections of a judicial trial. There

is nothing of a punitive nature about the felony exclusion provision.

As previously discussed, the *Nixon* case also indicates that a bill of attainder inflicts punishment upon an identifiable individual or class of individuals. The panel of commissioners concluded the claimant, as a felon, was an identifiable individual and was, therefore, burdened by the felony exclusion provision. In *Nixon*, the court, noting legislation is not a bill of attainder merely because it applies to a specific individual, stated:

"* * * By arguing that an individual or defined group is attainted whenever he or it is compelled to bear burdens which the individual or group dislikes, appellant removes the anchor that ties the bill of attainder guarantee to realistic conceptions of classifications and punishment. His view would cripple the very process of legislating, for any individual or group that is made the subject of adverse legislation can complain that the lawmakers could and should have defined the relevant affected class at a greater level of generality. Furthermore, every person or group made subject to legislation which he or it finds burdensome may subjectively feel, and can complain, that he or it is being subjected to unwarranted punishment. However expansive the prohibition against bills of attainder, it surely was not intended to serve as a variant of the equal protection doctrine, invalidating every act of Congress or the States that legislatively burdens some persons or groups but not all other plausible individuals. * * *" *Nixon, supra*, at 470-471 (Footnotes and citations deleted.)

For instance, conflict-of-interest laws have been upheld as not contravening the bill of attainder guarantee even though they inevitably apply to a specified individual or class of individuals. An example is *Bd. of Governors* v. *Agnew* (1947), 329 U.S. 441, where identifiable officers and em-

ployees of underwriting agencies were disqualified from serving as officers of the Federal Reserve Banks.

Bills of attainder have been found where a clergyman was barred from his profession because he would not swear he had never manifested any sympathy or support for the cause of the Confederacy,[4] and where an attorney was required to take a similar oath in order to practice before any federal court following the Civil War.[5] A law prohibiting the further payment of salary to three named government employees was also determined to be a bill of attainder.[6]

Bills of attainder have not been found where a felon was disqualified from carrying a gun[7]; where a felon was prohibited from obtaining a license to practice medicine[8]; and where felons were prohibited from becoming policemen.[9]

Thus, R.C. 2743.60(E) cannot be considered a bill of attainder only because it restricts the rights of the felon. The felon's rights can be restricted, as demonstrated above.

The felony exclusion contained in R.C. 2743.60(E) is not a bill of attainder within the meaning of the United States Constitution.

\* \* \*

The single commissioner and the panel of three commissioners erred in declaring R.C. 2743.60(E) unconstitutional. Pursuant to R.C. 2743.61, the court finds the decisions of the commissioners are unreasonable and unlawful. Hence, the order of the panel of commissioners is reversed and payment of the claim is denied.

*Order reversed.*

WILLIAM F. BROWN, J., retired, of the Coshocton County Court of Common Pleas, sitting by assignment in the Court of Claims.

---

[4] *Cummings* v. *Missouri* (1867), 71 U.S. (4 Wall.) 277.

[5] *Ex parte Garland* (1867), 71 U.S. (4 Wall.) 333.

[6] *United States* v. *Lovett* (1946), 328 U.S. 303.

[7] *United States* v. *Donofrio* (C.A. 5, 1972), 450 F.2d 1054.

[8] *Hawker* v. *New York* (1898), 170 U.S. 189.

[9] *Upshaw* v. *McNamara* (C.A. 1, 1970), 435 F. 2d 1188.